No. 26-60101

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

MCCOMB CHILDREN'S CLINIC, LTD., a Mississippi Corporation,

*Plaintiff-Appellant,*

v.

ROBERT F. KENNEDY, JR., Secretary, U.S. Department of Health & Human Services, in his official capacity; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; ANTHONY ARCHEVAL, in his official capacity as Acting Director of the Office for Civil Rights of the United States Department of Health & Human Services; OFFICE FOR CIVIL RIGHTS OF THE UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Mississippi
Case No. 5:24-cv-48

## APPELLANT'S BRIEF

Matthew S. Bowman
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
mbowman@ADFlegal.org
jbursch@ADFlegal.org

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Julie Marie Blake
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jblake@ADFlegal.org

Natalie D. Thompson
ALLIANCE DEFENDING FREEDOM
7250 Dallas Parkway, Suite 700
Plano, TX 75024
(469) 894-8700
nthompson@ADFlegal.org

*Counsel for Appellant*

# CERTIFICATE OF INTERESTED PERSONS

McComb Children's Clinic, Ltd. v. Kennedy, Jr., et al., No. 26-60101

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiff-Appellant:

McComb Children's Clinic, LTD.

Owners of Plaintiff-Appellant:

Michael Artigues, MD, FCP

Christopher Charles, MD, FCP, FAAP

Antoinette Hubble, MD, FAAP, FCP

Defendants-Appellants:

Robert F. Kennedy, Jr., Secretary of U.S. Department of Health & Human Services

U.S. Department of Health & Human Services

Anthony Archeval, Acting Director of the Office for Civil Rights of the U.S. Department of Health & Human Services

Office for Civil Rights of the U.S. Department of Health & Human Services

Counsel for Plaintiff-Appellant:

Matthew S. Bowman

Julie Marie Blake

Natalie D. Thompson

John J. Bursch

Jacob P. Warner

Alliance Defending Freedom

Nash Gilmore

D. Michael Hurst, Jr.

Phelps Dunbar, LLP

<u>Counsel for Defendants-Appellees</u>:

Ashley Cheung Honold

James E. Graves, III

Liam C. Holland

U.S. Department of Justice

U.S. Attorney's Office, Southern District of Mississippi

*/s/ Matthew S. Bowman*
Matthew S. Bowman
Counsel for Appellant

# STATEMENT REGARDING ORAL ARGUMENT

Counsel for Plaintiff-Appellant McComb Children's Clinic requests oral argument. Oral argument would help explain the complicated regulatory history and structure raised in this case and the context of several related court rulings.

# TABLE OF CONTENTS

Certificate of Interested Persons ...................................................i

Statement Regarding Oral Argument ................................................. iii

Table of Authorities.............................................................vi

Statement of Jurisdiction.........................................................1

Statement of Issues .............................................................2

Introduction.....................................................................4

Statement of the Case ...........................................................6

    A.    2016 Rulemaking .................................................6

    B.    The *Franciscan Alliance* Challenge to the 2016 Rule............7

    C.    The 2020 Rule and Resulting Challenges ............................8

    D.    The 2024 Rule .................................................10

    E.    The Challenge to the 2024 Rule by Several States ..............11

    F.    This Litigation.................................................13

Summary of the Argument .................................................15

Argument.........................................................................18

I.    MCC's case is not moot because it challenged the rule's "sex stereotypes" mandate and that mandate still exists....................18

    A.    HHS must show mootness to sustain dismissal...................18

    B.    HHS has not met its heavy mootness burden because MCC can still obtain relief against the gender-identity mandate found in the "sex stereotypes" provision. .............19

        1.    The 2024 Rule imposed more than one gender-identity mandate....................................................20

2. The district court did not vacate the 2024 Rule's "sex stereotypes" clause. .............................................23

3. Vacating the "sex stereotypes" mandate would give MCC effectual relief. .............................................24

4. The States' declaratory judgment does not moot MCC's request for vacatur. .........................................26

5. HHS's statements in the Trump administration cannot moot MCC's case. .............................................28

II. This Court should grant MCC's motion for summary judgment and vacate the rule's "sex stereotypes" provision. ........31

A. The ACA does not authorize HHS to redefine sex discrimination to cover gender-identity discrimination.......33

B. Title IX does not authorize HHS to redefine sex discrimination to cover gender-identity discrimination.......36

C. *Bostock* does not control Section 1557 or Title IX, and *Skrmetti* explains why. .....................................40

Conclusion ......................................................................................44

Certificate of Compliance.................................................................45

Certificate of Service .......................................................................46

**Cases**

*Adams by & through Kasper v. School Board of St. Johns County*,
57 F.4th 791 (11th Cir. 2022).............................................33, 37, 39

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
458 U.S. 592 (1982) .................................................................27

*Anderson v. Crouch*,
169 F.4th 474 (4th Cir. 2026)...................................................42

*Asapansa-Johnson Walker v. Azar*,
480 F. Supp. 3d 417 (E.D.N.Y. 2020) .......................................9, 22

*Asapansa-Johnson Walker v. Kennedy*,
790 F. Supp. 3d 138 (E.D.N.Y. 2025)........................................12

*Biden v. Texas*,
597 U.S. 785 (2022) .................................................................25

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ...........................................................passim

*Carroll Independent School District v. United States Department of
Education*,
No. 4:24-CV-00461-O, 2025 WL 1782572 (N.D. Tex. Feb. 19,
2025) ..................................................................................40

*Chafin v. Chafin*,
568 U.S. 165 (2013) .................................................................20

*Chalenor v. University of North Dakota*,
291 F.3d 1042 (8th Cir. 2002) ...................................................42

*Church of Scientology of California v. United States*,
506 U.S. 9 (1992) ....................................................................20

*Corner Post, Inc. v. Board of Governors of Federal Reserve System*,
603 U.S. 799 (2024) .................................................................27

*Cornerstone Christian Schools v. University Interscholastic League*,
  563 F.3d 127 (5th Cir. 2009) ........................................ 18

*Crocker v. Austin*,
  115 F.4th 660 (5th Cir. 2024) ....................................... 25

*CSX Transportation, Inc. v. Alabama Department of Revenue*,
  562 U.S. 277 (2011) ............................................... 34, 35

*Davis v. Michigan Department of Treasury*,
  489 U.S. 803 (1989) ................................................... 32

*DeLaughter v. Borden Company*,
  431 F.2d 1354 (5th Cir. 1970) ..................................... 16, 26

*Department of Education v. Louisiana*,
  603 U.S. 866 (2024) ............................................... 37, 40

*Diamond Alternative Energy, LLC v. EPA*,
  606 U.S. 100 (2025) ........................................... 18, 24, 28

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ................................................... 26

*Dubin v. United States*,
  599 U.S. 110 (2023) ................................................... 38

*FCC v. AT&T Inc.*,
  562 U.S. 397 (2011) ................................................... 35

*Florida v. Department of Health & Human Services*,
  739 F. Supp. 3d 1091 (M.D. Fla. 2024) .......................... 36, 37

*Franciscan Alliance, Inc. v. Azar*,
  414 F. Supp. 3d 928 (N.D. Tex. 2019) ............................. 8, 10

*Franciscan Alliance, Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022) ................................... passim

*Franciscan Alliance, Inc. v. Burwell*,
  227 F. Supp. 3d 660 (N.D. Tex. 2016) ............................. 7, 8

*Gutierrez v. Saenz,*
606 U.S. 305 (2025) ...................................................................... 20

*Harrison v. Jefferson Parish School Board,*
78 F.4th 765 (5th Cir. 2023) ........................................................ 27

*Inhance Technologies, L.L.C. v. EPA,*
96 F.4th 888 (5th Cir. 2024) ........................................................ 32

*Jackson v. Birmingham Board of Education,*
544 U.S. 167 (2005) ................................................................. 35, 40

*Jackson v. Noem,*
132 F.4th 790 (5th Cir. 2025) ...................................................... 25

*Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,*
575 F.2d 530 (5th Cir. 1978) ........................................................ 26

*Knox v. Service Employees International Union, Local 1000,*
567 U.S. 298 (2012) ................................................................. 19, 24

*L.W. ex rel. Williams v. Skrmetti,*
83 F.4th 460 (6th Cir. 2023) ........................................................ 41

*Louisiana v. United States Department of Education,*
2024 WL 3452887 (5th Cir. July 17, 2024) ................................... 37

*Louisiana v. United States Department of Education,*
737 F. Supp. 3d 377 (W.D. La. 2024) ........................................... 37

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...................................................................... 19

*M.K. ex rel. Koepp v. Pearl River County School District,*
144 F.4th 801 (5th Cir. 2025) ...................................................... 43

*M.K. ex rel. Koepp v. Pearl River County School District,*
No. 1:22-cv-25, 2023 WL 8851661 (S.D. Miss. Dec. 21, 2023) ....... 43

*Mansourian v. Regents of University of California,*
602 F.3d 957 (9th Cir. 2010) ........................................................ 39

*McKinley v. Abbott,*
643 F.3d 403 (5th Cir. 2011) ......................................................29, 30

*Meriwether v. Hartop,*
992 F.3d 492 (6th Cir. 2021) ................................................................41

*Miami University Wrestling Club v. Miami University,*
302 F.3d 608 (6th Cir. 2002) ...............................................................42

*Mirabelli v. Bonta,*
146 S. Ct. 797 (2026) ...................................................................... 19, 28

*National Association of Manufacturers v. Department of Defense,*
583 U.S. 109 (2018) .............................................................................20

*National Family Planning & Reproductive Health Association, Inc.
v. Sullivan,*
979 F.2d 227 (D.C. Cir. 1992).............................................................29

*National Federation of Independent Business v. Department of
Labor,*
595 U.S. 109 (2022) .............................................................................32

*Neely v. Martin K. Eby Construction Company,*
386 U.S. 317 (1967) .............................................................................31

*Neese v. Becerra,*
640 F. Supp. 3d 668 (N.D. Tex. 2022) ...............................................43

*New York State Rifle & Pistol Association, Inc. v. City of New York,*
590 U.S. 336 (2020) .............................................................................27

*Ozee v. American Council on Gift Annuities, Inc.,*
143 F.3d 937 (5th Cir. 1998) ...............................................................32

*Pederson v. Louisiana State University,*
213 F.3d 858 (5th Cir. 2000) ...............................................................39

*Pool v. City of Houston,*
87 F.4th 733 (5th Cir. 2023)................................................................14

*Price Waterhouse v. Hopkins,*
490 U.S. 228 (1989) ......................................................................8, 21

*Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois,*
159 F.4th 646 (9th Cir. 2025)........................................................42

*Rhodes v. Stewart,*
488 U.S. 1 (1988) ............................................................................26

*Roe v. Critchfield,*
131 F.4th 975 (9th Cir. 2025)........................................................41

*Soule v. Connecticut Association of Schools, Inc.,*
90 F.4th 34 (2d Cir. 2023) .............................................................41

*Space Exploration Technologies Corp. v. National Labor Relations Board,*
151 F.4th 761 (5th Cir. 2025)........................................................14

*Tennessee v. Becerra,*
739 F. Supp. 3d 467 (S.D. Miss. 2024)................................... passim

*Tennessee v. Kennedy,*
807 F. Supp. 3d 613 (S.D. Miss. 2025)................................... passim

*Tennessee v. United States Department of Education,*
615 F. Supp. 3d 807 (E.D. Tenn. 2022).........................................40

*Texas v. Becerra,*
739 F. Supp. 3d 522 (E.D. Tex. 2024) ........................... 36, 37, 39, 41

*Texas v. Biden,*
20 F.4th 928 (5th Cir. 2021)..........................................................25

*Texas v. Cardona,*
743 F. Supp. 3d 824 (N.D. Tex. 2024) .....................................37, 40

*Texas v. Equal Employment Opportunity Commission,*
933 F.3d 433 (5th Cir. 2019) ................................................. passim

*Texas v. United States,*
50 F.4th 498 (5th Cir. 2022)..........................................................30

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ...................................................................... 26

*United Savings Association of Texas v. Timbers of Inwood Forest
Associates, Ltd.*,
484 U.S. 365 (1988) ...................................................................... 35

*United States Parole Commission v. Geraghty*,
445 U.S. 388 (1980) ...................................................................... 18

*United States v. Heredia-Holguin*,
823 F.3d 337 (5th Cir. 2016) ................................... 15, 19, 24

*United States v. Nixon*,
418 U.S. 683 (1974) ...................................................................... 29

*United States v. Skrmetti*,
605 U.S. 495 (2025) ...................................... 5, 41, 42, 43

*United States v. Virginia*,
518 U.S. 515 (1996) ...................................................................... 35

*United States v. W. T. Grant Company*,
345 U.S. 629 (1953) ................................................ 19, 29

*Utility Air Regulatory Group v. EPA*,
573 U.S. 302 (2014) ...................................................................... 33

*West Virginia v. EPA*,
597 U.S. 697 (2022) ........................................... 18, 28, 32

*Whitman-Walker Clinic, Inc. v. HHS*,
485 F. Supp. 3d 1 (D.D.C. 2020) ................................... 9, 22

**Statutes**

20 U.S.C. § 1681 .................................................... 33, 37, 42

20 U.S.C. § 1686 ...................................................................... 38

21 U.S.C. § 399b ...................................................................... 33

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 1331 ...................................................................1

28 U.S.C. § 1346 ...................................................................1

28 U.S.C. § 1361 ...................................................................1

28 U.S.C. § 2201 ..............................................................1, 27

28 U.S.C. § 2202 ...................................................................1

42 U.S.C. § 1315a ...............................................................33

42 U.S.C. § 1396d ...............................................................34

42 U.S.C. § 18116 ............................................... 6, 32, 33, 34

42 U.S.C. § 18201 ...............................................................34

42 U.S.C. § 18202 ...............................................................34

42 U.S.C. § 2000e-2 ...........................................................42

42 U.S.C. § 237a .................................................................33

42 U.S.C. § 242s..................................................................33

42 U.S.C. § 280g-12 ...........................................................33

42 U.S.C. § 280k .................................................................34

42 U.S.C. § 300gg-13 .........................................................34

42 U.S.C. § 300gg-19a ........................................................34

42 U.S.C. § 711 ...................................................................34

42 U.S.C. § 712 ...................................................................34

42 U.S.C. § 713 ...................................................................34

5 U.S.C. § 553 .....................................................................29

5 U.S.C. § 706 ............................................................. passim

Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119 .................................................................... 34

**Regulations**

34 C.F.R. § 106.33 ........................................................................ 39

34 C.F.R. § 106.34 .................................................................. 38, 39

34 C.F.R. § 106.41 ........................................................................ 39

45 C.F.R. § 92.206 ......................................................................... 7

Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37160 (June 19, 2020) ................................................................................. 8, 9

Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31375 (May 18, 2016) ......................................................... 6, 7, 21

Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47824 (Aug. 4, 2022) ................................................................. 21

Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37522 (May 6, 2024) .......................................................... passim

Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving or Benefiting from Federal Financial Assistance, 40 Fed. Reg. 24128 (June 4, 1975) ............................. 38

**Other Authorities**

117 Cong. Rec. 30,407 (1971) ....................................................... 38

118 Cong. Rec. 5807 (1972) .......................................................... 38

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ......................................... 35, 38

*Deny*, Webster's Third New International Dictionary (1966) ................ 35

*Discrimination*, Webster's Third New International Dictionary (1966) ....................................................................................... 34

*Exclude*, Webster's Third New International Dictionary (1966)............35

*Sex*, Webster's New World Dictionary (1972).........................................33

## STATEMENT OF JURISDICTION

Plaintiff Appellant McComb Children's Clinic, Ltd., filed this lawsuit under the Administrative Procedure Act, 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. § 2201–02. The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1346, and 1361. The district court dismissed the case and entered final judgment against Plaintiff on February 5, 2026. ROA.821–822. Plaintiff filed its notice of appeal on February 23, 2026. ROA.823. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

In 2024, Appellees (the "Department") issued a rule that redefined sex discrimination under Section 1557 of the Affordable Care Act to cover gender-identity discrimination. Fearing the repercussions this change would have on medicine and its practice, Plaintiff-Appellant McComb Children's Clinic (MCC) filed this lawsuit and moved for summary judgment, asking the district court to vacate *all* parts of that rule prohibiting gender-identity discrimination in healthcare—including the "sex stereotypes" provision. ROA.015; ROA.025–26; ROA.548–49.

Meanwhile, in a separate lawsuit filed by other parties in the same district court, the court issued an order vacating *most* of the rule sections covering gender-identity discrimination; but it did *not* vacate the "sex stereotypes" provision, which the rule says also forbids gender-identity discrimination. *Tennessee v. Kennedy*, 807 F. Supp. 3d 613, 630 (S.D. Miss. 2025) ("*Tennessee*"). The court also gave those plaintiffs declaratory relief. *Id.* Then, over MCC's objection, the district court dismissed MCC's entire case as moot, including its request to vacate the rule's "sex stereotypes" gender-identity mandate. ROA.812–22.

This appeal raises two issues.

First, is MCC's request to vacate one part of a federal rule—the "sex stereotypes" gender-identity mandate—moot because in a separate case not involving MCC, the court vacated other parts of the same rule?

Second, is MCC entitled to summary judgment vacating the rule's "sex stereotypes" gender-identity mandate?

## INTRODUCTION

The Department issued a 2024 rule telling medical providers, including Plaintiff-Appellant MCC, that discriminating based on "sex stereotypes" means discriminating on the basis of gender identity. Then, in a separate lawsuit brought by different plaintiffs—*Tennessee*, 807 F. Supp. 3d 613—the district court below vacated most of the rule provisions forbidding discrimination based on gender identity while leaving the "sex stereotypes" clause on the books. Then the court dismissed MCC's case—even though MCC's case specifically challenged the "sex stereotypes" clause.

That was error. The "sex stereotypes" clause is not some vestigial appendage of the 2024 rule. It is a freestanding mandate that, by HHS's own account, independently forbids gender-identity discrimination. Two other district courts agree, and this Court has ordered injunctive relief in a prior case precisely because the threat of a gender-identity mandate smuggled in through "sex stereotypes" language was real and recurring.

The vacatur in *Tennessee* did not touch that clause. Its declaratory judgment runs only to the State plaintiffs in that case—not to MCC. And the new administration's policy shift, however welcome, cannot repeal a binding federal regulation. Only notice-and-comment rulemaking can do that, and HHS has not even begun the process. So MCC's lawsuit should be reinstated.

On the merits, the answer is straightforward. Neither the ACA nor Title IX authorizes the Department to redefine sex discrimination to encompass gender-identity discrimination—whether it travels under the label "gender identity" or the label "sex stereotypes." The ACA is littered with language recognizing biological differences between men and women, and the sex-discrimination language from Title IX, which the ACA relies on, allows sex-based distinctions in settings from showers to sports. To put everything beyond doubt, the Supreme Court has now held that declining to facilitate gender-transition procedures is not sex discrimination. *United States v. Skrmetti*, 605 U.S. 495, 521–22 (2025).

MCC asks this Court to reverse the dismissal, grant it summary judgment, and vacate the 2024 rule's "sex stereotypes" clause once and for all. Alternatively, it asks this Court to reverse and remand the case with express instructions for the district court to enter that relief.

# STATEMENT OF THE CASE

The challenged regulations here are part of a series of related regulations that began in 2016.

## A.    2016 Rulemaking

Section 1557 of the Affordable Care Act (ACA) allows Appellees at the U.S. Department of Health and Human Services to enact regulations to enforce the law's nondiscrimination requirements, which apply to health programs and activities receiving funds from HHS (including medical clinics such as MCC). 42 U.S.C. § 18116(c). HHS first finalized such rules in 2016. Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31375 (May 18, 2016) (2016 Rule).

The 2016 Rule prohibited discrimination "on the basis of sex" at 45 C.F.R. § 92.101, and defined "on the basis of sex" to include discrimination on the basis of "gender identity" and "sex stereotypes," among other things. 81 Fed. Reg. at 31466–68. Each of those terms was also defined at § 92.4. *Id.* at 31468. "Sex stereotypes" encompassed gender identity, that is, "expectations of how individuals represent or communicate their gender to others," "the expectation that individuals will consistently identify with only one gender and that they will act in conformity with the gender-related expressions stereotypically associated with that gender," and "gendered expectations related to the appropriate roles of a certain sex." *Id.*

The 2016 Rule had other sections prohibiting gender-identity discrimination. For example, it required regulated entities to provide equal program access on the basis of "gender identity," and to "transgender individual[s]" on certain terms. *Id.* at 31471 (codified at 45 C.F.R. § 92.206.)

**B.    The *Franciscan Alliance* Challenge to the 2016 Rule**

Private religious clinics and doctors, as well as states, challenged the 2016 Rule. Compl., *Franciscan All., Inc. v. Burwell*, No. 7:16-cv-00108 (N.D. Tex. Aug. 23, 2016). The district court preliminarily enjoined "the Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy." *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 696 (N.D. Tex. 2016). The parties had specifically targeted the "sex stereotypes" clauses in the rule. *See, e.g.*, Am. Compl., No. 7:16-cv-00108 (N.D. Tex. Oct. 17, 2016), Dkt. No. 21; States' Mot. Partial Summ. J., No. 7:16-cv-00108 (N.D. Tex. Oct. 21, 2016), Dkt. Nos. 22 & 22-1; *see* States' Mem. Supp. Mot. Summ. J. at 34, No. 7:16-cv-00108 (N.D. Tex. Feb. 4, 2019), Dkt. No. 133; CMDA's Mot. Summ. J. at 4, No. 7:16-cv-00108 (N.D. Tex. Feb. 4, 2019), Dkt. No. 135; CMDA's Mem. Supp. Mot. Summ. J. at 24–27, No. 7:16-cv-00108 (N.D. Tex. Feb. 4, 2019), Dkt. No. 136. HHS had argued that its gender-identity mandate flowed from and was paired with its "sex stereotypes" mandate resulting from its interpretation of *Price Waterhouse v.*

*Hopkins*, 490 U.S. 228 (1989). Defs.' Opp'n Pls.' Mots. Partial Summ. J. at 35, 39–40, No. 7:16-cv-00108 (N.D. Tex. Nov. 23, 2016), Dkt. No. 50. In its injunction order, the court specified that it was rejecting the Rule's (and HHS's) view that "sex stereotypes" encompassed gender-identity nondiscrimination. *Franciscan All.*, 227 F. Supp. 3d at 689 n.28.

Later, *Franciscan Alliance* converted its preliminary injunction into a final vacatur of portions of the rule. *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019). Incorporating by reference its preliminary-injunction opinion, the court said it was vacating "the unlawful portions of the Rule." *Id.* at 942–45.

**C.     The 2020 Rule and Resulting Challenges**

In the next administration, HHS attempted to change its Section 1557 regulations. Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37160 (June 19, 2020) (2020 Rule). The 2020 Rule expressed agreement with *Franciscan Alliance*. 85 Fed. Reg. at 37168 & n.28. For example, the 2020 Rule eliminated the definitions section at § 92.4 and the equal program access section at § 92.206, thus negating certain gender-identity mandates—including through "sex stereotypes" language. In relevant part, the 2020 Rule prohibited discrimination simply on the

basis of "sex," not including gender identity, sex stereotypes, or other iterations in the regulatory text. 85 Fed. Reg. at 37244.

Plaintiffs in New York and the District of Columbia challenged the 2020 Rule's repeal of HHS's gender-identity mandates. *Asapansa-Johnson Walker v. Azar*, 480 F. Supp. 3d 417, 430 (E.D.N.Y. 2020); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020). In New York, the district court considered whether the plaintiffs lacked standing because *Franciscan Alliance* had already vacated those mandates. *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 426–27. But the court concluded that the plaintiffs had standing because, in its view, *Franciscan Alliance* had left the ban on "sex-stereotypes" discrimination in place, and therefore it had not fully vacated the gender-identity mandates from the 2016 Rule. *Id.* at 430. So, the court concluded, it was the 2020 Rule that eliminated the remaining gender-identity mandate in the 2016 Rule as embodied within the sex stereotypes nondiscrimination ban. *Id.* at 427. In other words, the court found it could redress the plaintiffs' injury by *restoring* the "sex stereotypes" discrimination ban, because doing so would restore a gender-identity discrimination ban. The court preliminarily enjoined the 2020 Rule's elimination of the 2016 Rule's definitions of "on the basis of sex" including "sex stereotyping." *Id.* at 430. And the D.C. district court issued a similar injunction. *Whitman-Walker Clinic*, 485 F. Supp. 3d at 64.

Two years later, this Court addressed the issue. In *Franciscan Alliance*, the religious plaintiffs had sought not just vacatur under the Administrative Procedure Act (APA), but also permanent injunctive relief under the Religious Freedom Restoration Act (RFRA). The district court had granted the former but not the latter. *Franciscan All.*, 414 F. Supp. 3d at 944. But this Court approved both forms of relief—holding that a gender-identity mandate could recur based on the theory that "sex-stereotyping discrimination encompasses gender identity discrimination." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 372–73 (5th Cir. 2022).

### D.    The 2024 Rule

After another administration change, HHS withdrew its appeal of the preliminary injunctions against the 2020 Rule. Order, *Asapansa-Johnson Walker v. Becerra*, No. 20-3580 (2d Cir. Nov. 22, 2021), Dkt. No. 83; Order, *Whitman-Walker Clinic, Inc. v. HHS*, No. 20-5331 (D.C. Cir. Nov. 19, 2021). HHS then issued a *new* regulation reimposing gender-identity mandates for Section 1557—the regulation challenged here. Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37522 (May 6, 2024) (2024 Rule).

Like the 2016 Rule before it, the 2024 Rule again specified that it prohibited discrimination on the basis of "[g]ender identity" (codified at § 92.101(a)(2)(iv)) and "[s]ex stereotypes" (codified at § 92.101(a)(2)(v)) as aspects of sex discrimination. *Id.* at 37699. Though it no longer had a

10

definition section defining those phrases, HHS explained in the 2024 Rule's preamble that "discrimination against a person because they are transgender" is a violation of its ban on "sex stereotypes" discrimination. *Id.* at 37578; *see also id.* at 37574 (similar). Other aspects of the 2024 Rule prohibited gender-identity discrimination in various ways. *See, e.g., id.* at 37700–01.

### E.    The Challenge to the 2024 Rule by Several States

In Mississippi, two lawsuits challenged the 2024 Rule. MCC filed this case. MCC is a pediatrics clinic in McComb, Mississippi, which receives federal funding from HHS to care for children. ROA.035–38. In relevant part, MCC challenged the rule under the APA, 5 U.S.C. § 706, seeking protection from the 2024 Rule's gender-identity mandates.[1] ROA.048–51. In the second case, 15 States led by Tennessee sued to eliminate the gender-identity mandates in the rule. Compl., *Tennessee v. Kennedy*, No. 1:24-cv-00161 (S.D. Miss. May 30, 2024). Both cases ended up assigned to the same district judge.

Both sets of plaintiffs sought a preliminary injunction, and both moved for summary judgment. *See* ROA.089, ROA.548; Mot. Prelim. Inj., *Tennessee v. Kennedy*, No. 1:24-cv-00161 (S.D. Miss. June 13, 2024), Dkt. No. 20; Mot. Summ. J., *Tennessee v. Kennedy*, No. 1:24-cv-

---

[1] MCC also brought claims under the Free Speech Clause of the First Amendment and structural constitutional principles, ROA.051–56, but is only raising its APA claim in this appeal.

00161 (S.D. Miss. Apr. 25, 2025), Dkt. No. 61. The district court ruled on those motions only in the States' case, eventually issuing final judgment in the States' favor. *Tennessee*, 807 F. Supp. 3d at 630. In its summary judgment ruling in *Tennessee*, the district court did not vacate the entire 2024 Rule but specified it was vacating only certain clauses in the rule. *Id.* at 630. Those clauses included the "[g]ender identity" discrimination ban at § 92.101(a)(2)(iv), but *not* the "[s]ex stereotypes" discrimination ban at § 92.101(a)(2)(v). *Id.* The district court also granted—to "Plaintiffs" in the States' case—a declaratory judgment saying HHS exceeded its authority in interpreting and implementing the law to encompass gender identity. *Id.* The appeal deadline expired with no appeal.

Meanwhile, the preliminary injunction issued in the States' case against the 2024 Rule led the district court in *Asapansa-Johnson Walker v. Kennedy* to reactivate its still-pending case challenging the 2020 Rule. 790 F. Supp. 3d 138 (E.D.N.Y. 2025). In doing so, that court reaffirmed its view that sex-stereotypes nondiscrimination under Section 1557 imposes a distinct prohibition on gender-identity discrimination. *Id.* at 144. The court reopened its case to entertain dispositive motions so that it may decide whether to approve a gender-identity nondiscrimination in HHS's Section 1557 regulations through the 2016 Rule's ban on sex-stereotypes discrimination. *Id.* at 147.

### F. This Litigation

In filing this case, MCC knew the above history. MCC, thus, specifically sought relief not just against the words "gender identity," but against any "alternative theory" HHS used to engraft a gender-identity mandate in the 2024 Rule—including the rule's ban on "sex stereotypes" discrimination. ROA.025–26, ROA.057.

MCC's motion for preliminary injunction then sought delay of the effective date of the entire rule, which would have protected it from *all* of the rule's mandates. ROA.337. Likewise MCC's motion for partial summary judgment (which encompassed all gender-identity issues) requested relief against not just the "gender identity" clause at § 92.101(a)(2)(iv), but all clauses of § 92.101 "to the extent it reaches discrimination on the basis of gender identity[ ] including … any alternative theory under the rule that Defendants may adopt to claim authority to prohibit gender identity discrimination." ROA.548. MCC's motions were fully briefed, but the district court did not rule on them in the ordinary course.

On December 23, 2025, after the *Tennessee* final vacatur order was no longer appealable, the district court issued an order in this case "Requiring All Parties to Show Cause Why This Lawsuit Should Not Be Dismissed as Moot." ROA.755. In response, MCC pointed out that while it agreed with the *Tennessee* court's ruling vacating the "gender identity" language in the 2024 Rule, the court's order omitted the "[s]ex

stereotypes" clause at § 92.101(a)(2)(v) from the vacatur. ROA.763–764. Because the court left the vast majority of the 2024 Rule in place, MCC explained, the rule's "sex stereotypes" gender-identity mandate persists in that structure. ROA.766–767. MCC had requested vacatur of the "sex stereotypes" provision in its complaint and motions. ROA.768–769. And because the *Tennessee* order did not give MCC "precisely the same" relief it sought, the government could not meet its heavy burden to establish mootness. ROA.763 (quoting *Space Expl. Techs. Corp. v. Nat'l Lab. Rels. Bd.*, 151 F.4th 761, 767 n.5 (5th Cir. 2025) (quoting *Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023))).

On February 5, 2026, the district court dismissed this case over MCC's objection. ROA.821. In response to MCC's argument, the court stated that in *Tennessee* it had "held that Defendants violated the APA to the extent that they defined discrimination on the basis of sex to include 'gender identity,'" and it had "granted a universal vacatur that removed all references to 'gender identity' from the pertinent regulations." ROA.817. This, the court concluded, meant that "the Court has already granted the relief MCC now seeks." ROA.817. On the same day, the district court issued final judgment dismissing the case without prejudice. ROA.822. By dismissing the entire case as moot, the district court denied MCC's pending motions, including its motion for partial summary judgment. MCC timely appealed. ROA.823.

## SUMMARY OF THE ARGUMENT

MCC's case is not moot. HHS bears a "heavy burden" to show mootness, *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 449 (5th Cir. 2019) ("*EEOC*"). This mootness burden applies—rather than a mere standing inquiry—because as an object of HHS's regulation, MCC had standing when it challenged the 2024 Rule. *Id.* at 446–47.

None of the reasons identified by the district court meets HHS's mootness burden. MCC asked the district court to vacate *both* the "gender identity" language in the 2024 Rule *and* the "sex stereotypes" discrimination ban in that rule since it encompassed gender identity. ROA.025–26, ROA.057, ROA.337, ROA.548. The district court vacated the former, but not the latter, in the States' lawsuit. *Tennessee*, 807 F. Supp. 3d at 630. Because that relief is not the "precise" relief MCC requested, *see Franciscan All.*, 47 F.4th at 374, and because it leaves an existing ban on gender-identity discrimination that regulates MCC today, MCC can still seek the "effectual relief" of vacating the sex stereotypes clause. *United States v. Heredia-Holguin*, 823 F.3d 337, 340 (5th Cir. 2016).

No other actions have mooted MCC's case. The district court's declaratory judgment given to other parties does not give MCC the relief it seeks here. *Tennessee*, 807 F. Supp. 3d at 630. Declaratory judgments run only to parties, and MCC was not a party to the *Tennessee* case. *DeLaughter v. Borden Co.*, 431 F.2d 1354, 1358 (5th Cir.

1970). Nor did the judgment purport to protect all Mississippi residents *parens patriae.*

And even if the judgment had done so, that relief would be different than the vacatur MCC requested here. Vacatur would instantly relieve MCC of the 2024 Rule's burdens, whereas declaratory judgment for another party would leave MCC with an existing burden and no avenue to enforce its rights.

Finally, the current administration's criticism of the last administration's actions to embrace gender ideology cannot moot MCC's case. MCC's injury flows from a federal regulation, not mere policy views. Agencies can only repeal regulations by notice and comment rulemaking, not by less decisive means. *EEOC*, 933 F.3d at 450. Executive orders and other notices do not repeal regulations, and thus do not eliminate the compliance burden on regulated parties—like MCC.

After reversing the dismissal, this Court should order the district court to enter summary judgment vacating the 2024 Rule's "sex stereotypes" discrimination ban. MCC's motion for summary judgment raises a pure issue of law, and the rule's "sex stereotypes" clause illegally exceeds HHS's authority. The ACA does not authorize a gender-identity discrimination ban; in the ACA, Congress emphasized that medicine is biologically driven, and men and women are biologically different. And Title IX, incorporated by reference in ACA Section 1557, also has no gender-identity mandate. Title IX prohibits

only sex discrimination, distinguishes between the two sexes, and explicitly recognizes sex differences as well as the need for separate women's activities and spaces.

On the merits, the district court agrees that HHS lacks authority to impose a gender-identity mandate. *Tennessee*, 807 F. Supp. 3d at 627. The district court simply took the view that it had already vacated the mandate in another case. ROA.817. The court was incorrect. It left part of the gender-identity mandate in the 2024 Rule, § 92.101(a)(2)(v), and rejected MCC's request to finish the job and eliminate that clause. The 2024 Rule's "sex stereotypes" mandate exceeds HHS's authority, and this Court should declare it unlawful and set it aside or remand with instructions that the district court do so. 5 U.S.C. § 706.

# ARGUMENT

## I. MCC's case is not moot because it challenged the rule's "sex stereotypes" mandate and that mandate still exists.

This court reviews dismissals on jurisdictional grounds de novo. *See Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009).

### A. HHS must show mootness to sustain dismissal.

Since MCC had standing when it filed suit, this appeal concerns mootness, not standing. Standing is assessed at the time of filing, while later developments that allegedly negate standing raise the question of mootness. *See EEOC*, 933 F.3d at 449 (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

MCC had standing when it sued. The 2024 Rule was finalized on May 6, 2024. MCC filed this case one week later. There can be "little question" MCC had standing to challenge the new regulation because MCC was (and is) an "object" of the regulation, as the regulation requires MCC to refrain from discrimination. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025) ("if a plaintiff is an object of the action (or forgone action) at issue, then there is ordinarily little question" it can demonstrate causation and redressability) (citation modified); *see also West Virginia v. EPA*, 597 U.S. 697, 719 (2022) ("there can be 'little question' that the rule does injure the States, since they are 'the object of' its requirement) (quoting *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 561–62 (1992)); *Mirabelli v. Bonta*, 146 S. Ct. 797, 803 (2026) (per curiam) (plaintiffs "very likely have standing because they are objects of the challenged exclusion policies").

The district court apparently agreed MCC had standing when it sued. The district court dismissed based on mootness—a doctrine that presumes standing. The district court had correctly held that other objects of the regulation—the States—had standing. *Tennessee v. Becerra*, 739 F. Supp. 3d 467, 475 (S.D. Miss. 2024). And even after the new administration took office, the district court held that the States' claims for summary judgment were still ripe. *Tennessee*, 807 F. Supp. 3d at 621. The district court correctly observed that 2025 executive orders and HHS public notices cannot negate the 2024 Rule because under the APA, agencies cannot negate a rulemaking without following notice and comment procedures. *Id.* And HHS had not yet said any of those things when MCC sued in 2024.

**B.  HHS has not met its heavy mootness burden because MCC can still obtain relief against the gender-identity mandate found in the "sex stereotypes" provision.**

HHS's burden to show mootness "is a heavy one." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Heredia-Holguin*, 823 F.3d at 340 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). HHS

must show it is "impossible for the court to grant any effectual relief whatever." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). Even if "the practical impact of any decision is not assured," the claim need not be moot. *Gutierrez v. Saenz*, 606 U.S. 305, 320 (2025) (quoting *Chafin v. Chafin*, 568 U.S. 165, 175 (2013)).

A claim for relief is not moot if the rule it challenged "remains on the books." *Nat'l Ass'n of Mfrs.* ("*NAM*") *v. Dep't of Def.*, 583 U.S. 109, 120 n.5 (2018). Where a challenged rule remains, the plaintiff continues to have a "concrete interest" in obtaining relief against it. *Id.* (citation omitted).

MCC asked the court to vacate the "sex stereotypes" clause in the 2024 Rule, and the *Tennessee* order did not do so. *Tennessee*, 807 F. Supp. 3d at 630. It left the "sex stereotypes" mandate in place along with nearly all of the 2024 Rule. So MCC's case is not moot.

### 1. The 2024 Rule imposed more than one gender-identity mandate.

MCC challenged the 2024 Rule's gender-identity mandate. But MCC recognized that HHS was not imposing this mandate in a single provision. HHS imposed its gender-identity mandate through complex, overlapping provisions. HHS said so in the rule.

To be sure, the 2024 Rule imposed nondiscrimination based on the words "gender identity." But HHS did more. It imposed other mandates that also prohibit gender-identity discrimination. Central to this appeal,

HHS said that it was imposing a distinct ban on gender-identity discrimination by banning "sex stereotypes" discrimination. In the final rule, HHS explained that "discrimination against a person because they are transgender" is a violation of its prohibition on "sex stereotypes" discrimination. 89 Fed. Reg. at 37578; *see also id.* at 37574.

This followed from HHS's 2022 proposed rule, which set up the final 2024 Rule. In the proposed rule, HHS affirmed that by imposing its "sex stereotypes" mandate, it was synthesizing HHS's view of the meaning of sex discrimination under both *Price Waterhouse v. Hopkins,* 490 U.S. 228, 250–51 (1989), and *Bostock v. Clayton County*, 590 U.S. 644 (2020). Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47824, 47858 (Aug. 4, 2022). *Bostock*, of course, interpreted Title VII's sex discrimination prohibition to forbid certain employment decisions based on transgender status. So in both the 2022 proposed rule and the 2024 final rule, HHS interpreted a prohibition on "sex stereotypes" discrimination to encompass a ban on gender-identity discrimination.

This HHS view on sex stereotypes tracked the 2016 Rule, which imposed its gender-identity mandate through multiple provisions. 81 Fed. Reg. at 31392, 31468. HHS argued that the 2016 Rule had imposed a gender-identity mandate through its prohibition on "sex stereotypes" discrimination based on its reading of *Price Waterhouse.* Defs.' Opp'n Pls.' Mots. Partial Summ. J. at 35, 39–40, *Franciscan All.*, No. 7:16-cv-

00108 (N.D. Tex. Nov. 23, 2016), Dkt. No. 50. Two district courts later accepted HHS's view that the rule's "sex stereotypes" mandate bans gender identity discrimination independently from the rule's "gender identity" language. *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 430; *Whitman-Walker Clinic*, 485 F. Supp. 3d at 26. And that led this Court to order injunctive relief to protect healthcare entities from the real threat that the "sex stereotypes" gender-identity mandate could again rear its head. *Franciscan All.*, 47 F.4th at 372.

This is why MCC's complaint explicitly challenges *both* the "gender identity" mandates by name *and* the "sex stereotypes" mandate: the HHS baked a gender-identity mandate into each. MCC showed that the 2024 Rule used multiple provisions to ban gender-identity discrimination—and named the "sex stereotypes" clause as one of those provisions. ROA.025–26. Having challenged each of those provisions explicitly, ROA.026, MCC sought vacatur of "the rule to the extent it prohibits discrimination on the basis of gender identity"—including the "sex stereotypes" clause. ROA.057.

MCC's motion for preliminary injunction sought relief against the entire rule, which encompasses the "sex stereotypes" clause. ROA.337. And MCC's summary judgment motion seeks vacatur of all of § 92.101 —which likewise encompasses the "sex stereotypes" clause. ROA.548. Repeating its complaint language, MCC sought to protect itself from

"any alternative theory" HHS would use to impose a gender-identity mandate. ROA.548.

### 2. The district court did not vacate the 2024 Rule's "sex stereotypes" clause.

Though the district court declined to rule on MCC's motions at the outset, it proceeded to do so in the States' case. In granting the States' preliminary-injunction motion, it stayed the effective date of all of § 92.101—which necessarily included the "sex stereotypes" clause. *Tennessee v. Becerra*, 739 F. Supp. 3d at 486.

Regrettably, the district court took a narrower approach at final judgment. The court chose to vacate only specific clauses in the rule, allowing the bulk of the 2024 Rule to go into effect. *Tennessee*, 807 F. Supp. 3d at 628. The States asked the Court to vacate § 92.101 entirely. *Id.* Had the court done so, MCC would not be here today. But the district court chose a different approach. It parsed several clauses *within* § 92.101 and left most of those clauses in place. The only clause in § 92.101 that the district court vacated was § 92.101(a)(2)*(iv)*—the clause expressly using the words "gender identity." *Id.* at 629. This left in place the "sex stereotypes" clause at § 92.101(a)(2)*(v).* And because the court also let the bulk of the 2024 Rule go into effect, its judgment allowed HHS to impose its ban on "sex stereotypes" discrimination, which HHS said in the final rule includes gender-identity discrimination.

The district court also issued a declaratory judgment for the specific State plaintiffs in *Tennessee*, stating: "HHS exceeded its statutory authority when (1) it interpreted Title IX, as incorporated into Section 1557, to prohibit discrimination on the basis of gender identity, and (2) when it implemented Section 1557 regulations concerning gender identity and "gender affirming care." *Id.* at 630. Unlike the vacatur, which negates portions of the rule for every regulated entity nationwide, the declaratory judgment only runs to the "Plaintiffs." *Id.*

### 3. Vacating the "sex stereotypes" mandate would give MCC effectual relief.

Because the *Tennessee* judgment did not vacate the rule's "sex stereotypes" clause, MCC can still obtain "effectual relief." *Heredia-Holguin*, 823 F.3d at 340 (quoting *Knox*, 567 U.S. at 307).

Vacating the "sex stereotypes" clause is effectual relief. That rule regulates MCC, so vacating it relieves a regulatory burden on MCC as the object of the regulation. *See Diamond Alt. Energy*, 606 U.S. at 112 (there is "little question" that the object of a regulation can show causation and redressability). And as HHS itself said in the rule, the "sex stereotypes" clause imposes a separate and distinct gender-identity mandate. MCC's complaint asks to be free of all the gender-identity mandates in the rule. Vacating the "sex stereotypes" mandate would give MCC instant, effectual relief.

24

The district court appears to have concluded that because it vacated the gender-identity clause at § 92.101(a)(2)(iv), MCC is not helped by vacating the "sex stereotypes" clause at § 92.101(a)(2)(v). But as two other district courts have held, this conclusion disregards the long history of both HHS and courts interpreting both clauses to impose separate bans on gender-identity discrimination.

This Court's precedent shows that when one federal agency action is negated, but another agency action remains, a case challenging both actions is not moot. As this Court held in *Franciscan Alliance*, where one part of an agency rule is vacated, but another "substantially similar" rule remains, "[t]he change will not moot the case." 47 F.4th at 374 (quoting *Texas v. Biden*, 20 F.4th 928, 958 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022)). That is exactly the situation here. The "gender identity" clause at § 92.101(a)(2)(iv) was vacated, but the "sex stereotypes" clause at § 92.101(a)(2)(v) imposes a substantially similar ban on gender-identity discrimination. Because that latter clause continues to regulate MCC, this situation cannot give rise to mootness. *See Jackson v. Noem*, 132 F.4th 790, 794 (5th Cir. 2025) (reversing the district court's dismissal for mootness and remanding to consider the plaintiffs' request for complete relief); *see also Crocker v. Austin*, 115 F.4th 660, 668 (5th Cir. 2024) (reversing and remanding dismissal for mootness because "the district court failed to consider Appellants' broader, ongoing claims").

### 4. The States' declaratory judgment does not moot MCC's request for vacatur.

The district court also hinted that the declaratory judgment granted to the States negated MCC's requested relief against the "sex stereotypes" mandate. That's wrong for two reasons.

First, declaratory judgments are not binding as to non-parties. *See DeLaughter*, 431 F.2d at 1358. Declaratory judgments only affect "the behavior of the defendant toward *the plaintiff*." *Rhodes v. Stewart,* 488 U.S. 1, 4 (1988) (per curiam) (citation modified). Since MCC was not a plaintiff in *Tennessee*, the judgment does not limit HHS's behavior *towards* MCC. As the Supreme Court recently reiterated, "party-specific principles [ ] permeate our understanding of equity," and that includes "declaratory" relief. *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025) (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). The federal government may not use this principle to its benefit in a case like *CASA*, then turn around to narrow this principle to MCC's detriment here.

Claim and issue preclusion help illustrate why the Tennessee declaration does not moot this case. *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535–36 (5th Cir. 1978). As a non-party, MCC cannot use the States' declaratory judgment to stop HHS from enforcing its "sex stereotypes" mandate. MCC asked for its own

declaratory relief, ROA.058, but the district court dismissed that claim with the rest of the case.

The fact that MCC resides in Mississippi, and Mississippi was a party to *Tennessee*, also does not help. MCC is a private entity, not an arm of the State. States cannot assert *parens patriae* interests to protect their residents without first satisfying "hard-and-fast limits." *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 772 (5th Cir. 2023) (discussing *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602 (1982)). The district court did not undertake this analysis or claim to extend the declaratory judgment *parens patriae.*

Second, declaratory judgments and vacatur are fundamentally different kinds of relief. A case is moot if the plaintiff receives "the precise relief that [the plaintiff] requested [in the prayer for relief in their complaint]." *Franciscan All.*, 47 F.4th at 374 (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338–39 (2020)). Vacatur "hold[s] unlawful and set[s] aside" an illegal agency action. 5 U.S.C. § 706(2). Vacatur eliminates the rule, and thus instantly protects the regulated entity from the rule's requirements. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829–30 (2024) (Kavanaugh, J., concurring).

In contrast, declaratory judgment lets the court "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). Such a declaration does not negate the regulation itself. Nor, as noted

above, does it extend beyond the "interested party" to that case. Even if MCC had been given declaratory judgment, its request for vacatur would not be moot. But here, the declaratory judgment does not even belong to MCC. Only the States have it, and MCC cannot enforce it. The States' declaratory judgment does not remotely moot MCC's request for vacatur.

### 5. HHS's statements in the Trump administration cannot moot MCC's case.

Because the *Tennessee* vacatur and declaratory judgment do not moot MCC's case, that leaves only some statements HHS has made since January 2025. But as the *Tennessee* district court correctly held in the States' lawsuit, these executive orders and notices cannot negate portions of the Section 1557 rule. 807 F. Supp. 3d at 621.

As noted, the object of a regulation has standing to challenge it. *West Virginia*, 597 U.S. at 719; *Diamond Alt. Energy*, 606 U.S. at 112; *Mirabelli*, 146 S. Ct. at 803. So the question is whether the challenged rule—the "sex stereotypes" clause at § 92.101(a)(2)(v)—is on the books. The district court below admittedly did not vacate it. And despite the welcome policy views of the new administration, that administration cannot legally repeal a substantive federal regulation by issuing an executive order or a public notice. "[A]n agency issuing a legislative rule is itself bound by the rule until that rule is amended or revoked." *Tennessee*, 807 F. Supp. 3d at 621 (quoting *Nat'l Fam. Planning &*

*Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 234 (D.C. Cir. 1992)). "So long as this regulation is extant it has the force of law." *United States v. Nixon*, 418 U.S. 683, 695 (1974).

This Court has rejected the idea that an agency head's "recent change of position" moots a challenge to existing regulations. *EEOC*, 933 F.3d at 450. In *EEOC*, the government had issued binding "guidance" (which the court held to be the equivalent of a rule), and Texas was an object of that regulation. *Id.* at 446, 451. Rather than repeal the guidance, the Attorney General issued a memorandum pulling back on enforcement. *Id.* at 449–50. This Court held the case was not moot. "Voluntary cessation" of conduct does not satisfy the "heavy burden" of mootness, because the defendant has not made it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 449 (quoting *W. T. Grant Co.*, 345 U.S. at 632, and *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011)).

The same is true here. Executive orders and non-rulemaking notices cannot make it "absolutely clear" that this sex-stereotypes gender-identity mandate "could not reasonably be expected to recur." *McKinley*, 643 F.3d at 406 (citation omitted). The sex-stereotypes provision is still on the books. It "has the force of law." *Nixon*, 418 U.S. at 695. Under the APA, the agency can repeal it only through notice and comment rulemaking, 5 U.S.C. § 553; *Tennessee*, 807 F. Supp. 3d at 621 ("Defendants do not possess the authority to repeal or amend the Rule

without conducting rulemaking, which includes notice and comment.") But HHS has not done so. HHS has not even published a proposed repeal rule. And if it had, the case would still not be moot. This Court has rejected mootness arguments even after a repeal rule was finalized, where the rule was not yet in effect. *Texas v. United States*, 50 F.4th 498, 520 (5th Cir. 2022). Here, HHS has not even started down the multi-year path of repealing this rule.

The district court actually found that some of HHS's "arguments and actions" imply an intent to maintain authority to enforce the gender-identity nondiscrimination. *Tennessee*, 807 F. Supp. 3d at 621 (Defendants "continue to argue that the Rule should not be subjected to judicial review unless or until HHS begins an enforcement action against Plaintiffs. They further argue that the Rule's gender-identity provisions should not be vacated; they seek to limit the scope of any vacatur; and they oppose entry of a declaratory judgment."). Just as in *EEOC*, where the government tried to hedge its bets and "endorsed parts of the Guidance on remand," 933 F.3d at 450, the new administration's aspirational statements do not moot MCC's case.

It can "reasonably be expected" that HHS will change its mind about gender identity. *McKinley*, 643 F.3d at 406 (citation omitted). HHS has changed its policy view three times since 2020. This Court has observed that HHS's Section 1557 rules "flicker in and out of existence," and awarded other entities additional relief even after gender-identity

30

sections of the rule were vacated. *Franciscan All.*, 47 F.4th at 375. MCC faces an even greater threat, because at least the *Franciscan Alliance* plaintiffs were allowed to obtain APA vacatur. The district court refused to let MCC do the same here. Without vacatur, HHS will not have to wait years for proposed and final rulemaking to target MCC because the "sex stereotypes" mandate is in effect today and can be immediately enforced. This Court should reverse the dismissal below and allow MCC to pursue its request to vacate the *entire* gender-identity mandate.

## II. This Court should grant MCC's motion for summary judgment and vacate the rule's "sex stereotypes" provision.

In addition to reversing the dismissal on mootness grounds, this Court should grant MCC's motion for partial summary judgment—which the district court denied in dismissing the case—and vacate the "sex stereotypes" clause of the 2024 Rule. Alternatively, this Court should reverse and remand with instructions to enter summary judgment vacating the 2024 Rule's "sex stereotypes" clause.

Appellate jurisdiction is "certainly broad enough to include the power to direct entry of judgment." *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 322 (1967). Rather than "postpone the inevitable and remand to the district court," this Court should instruct the district court to grant MCC's motion for summary judgment, which raises "an easily-resolved question of law." *Ozee v. Am. Council on Gift Annuities,*

*Inc.*, 143 F.3d 937, 940–41 (5th Cir. 1998) (reversing the denial of dispositive motions and rendering judgment granting them).

Courts "shall … hold unlawful and set aside agency action … in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706. "Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 595 U.S. 109, 117 (2022) (per curiam). "The appropriate starting point when interpreting any statute is its plain meaning." *Inhance Techs., L.L.C. v. EPA*, 96 F.4th 888, 893 (5th Cir. 2024) (citation omitted). In addition, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia*, 597 U.S. at 721 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

The 2024 Rule purports to implement Section 1557 of the ACA, that is, 42 U.S.C. § 18116. 89 Fed. Reg. 37522 (*passim*). But sex discrimination does not mean "gender identity" discrimination under Section 1557, and HHS's interpretation contradicts both the statutory context and common sense. The opposite conclusion would violate the major-questions doctrine. Banning gender-identity discrimination as a condition of federal funding in the nation's entire healthcare industry is a matter "of vast economic and political significance," *West Virginia*, 597 U.S. at 716 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324

(2014)), and Congress did not clearly do so either in Section 1557 or in Title IX, the statute referenced in Section 1557.

### A. The ACA does not authorize HHS to redefine sex discrimination to cover gender-identity discrimination.

Section 1557 forbids, "on the ground prohibited under … title IX of the Education Amendments of 1972" an individual from "be[ing] excluded from participation in, … denied the benefits of, or … subjected to discrimination under[ ] any health program." 42 U.S.C. § 18116(a).

Start with the protected "ground." Title IX forbids certain conduct based on "sex." 20 U.S.C. § 1681(a). Though neither Title IX nor Section 1557 defines "sex," its original meaning is clear: sex is "either of the two divisions, male or female, into which persons … are divided, with reference to their reproductive functions." *Sex*, Webster's New World Dictionary (1972). The "overwhelming majority of dictionaries" in 1972 agreed on this definition. *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) (en banc) (collecting sources).

The ACA itself reflects this binary understanding of "sex." Congress enacted the ACA to address "women's *unique* health care needs." 42 U.S.C. § 1315a(b)(2)(B)(i) (emphasis added). It mandated data analysis "by sex," required officials to give information about medical care for "women … on those areas in which differences between men and women exist," 21 U.S.C. § 399b(b)(3), and refers to "women" separately from "men" throughout. 42 U.S.C. §§ 237a, 242s, 280g-12(a)(3)(B),

280k(b)(1), 300gg-13(a)(4), 711(d)(4)(C), 712 (note), 713(c)(1), 1396d(l)(3)(B)(ii) & (bb)(1), 18201(1), 18202(a). The ACA also uses sex-specific terms such a "female" to designate classes of individuals entitled to sex-specific care. *Id.* § 300gg-19a(d)(1)(A). And it consistently uses the binary pronouns "his or her." *E.g.*, Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119, 261, 670, 785, 809, 837, 966. This use of sex-based language cannot be reconciled with defining "sex" to encompass gender identity as a protected "ground" under Section 1557.

Next, consider the word "discrimination." Sometimes, it means "to make a distinction" or to treat someone "differently." *Discrimination*, Webster's Third New International Dictionary 648 (1966) ("Webster's Third"). But in a civil-rights statute, to "be subjected to discrimination," 42 U.S.C. § 18116(a), conveys a distinction for the wrong reason: "a difference in treatment or favor on a class or categorical basis in disregard of individual merit," Webster's Third 648, i.e., invidious discrimination. Or, as the Supreme Court has put it, to "discriminate" means to treat "similarly situated" individuals differently. *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 287 (2011); *Bostock*, 590 U.S. at 657.

Section 1557 also forbids "exclud[ing] from participation in" or "den[ying] the benefits of … any health program." 42 U.S.C. § 18116(a). These nearby terms help clarify what discrimination means. *FCC v.*

*AT&T Inc.*, 562 U.S. 397, 406 (2011) (multiple "words together may assume a more particular meaning than those words in isolation"); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195–98 (2012) (explaining associated-words canon). To "exclude" means to "bar from participation, enjoyment, consideration, or inclusion." *Exclude*, Webster's Third 793. And to "deny" means "to turn down or give a negative answer." *Deny*, Webster's Third 603. These words reinforce that discrimination is not merely "differential" treatment, but "less favorable" treatment, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005), where nothing justifies "the difference in treatment," *CSX*, 562 U.S. at 287.

Finally, these words must be understood within the context of a "health program," like gynecology offices, endocrinology clinics, and operating rooms. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("A provision … is often clarified by" its "context."); Scalia & Garner, *supra*, at 167–69 (explaining whole-text canon). Though considering sex isn't generally "relevant to the selection, evaluation, or compensation of employees," *Bostock*, 590 U.S. at 660 (citation omitted), it is critical to ensuring equal sex-based opportunities in health contexts like gynecology offices. This is because "[p]hysical differences" between the sexes are "enduring," *United States v. Virginia*, 518 U.S. 515, 533, 540, 550 n.19 (1996), and often require notice to ensure equal healthcare opportunities for men and women.

Many district courts, including the one below when it decided the States' case, got this issue right as they preliminarily enjoined the 2024 Rule. The rule's "unworkable" interpretation that sex includes gender identity would rip Section 1557 right out of Congress's accompanying text. *Tennessee v. Becerra*, 739 F. Supp. 3d at 481–82. Redefining "sex" to mean gender identity would undermine Congress's use of sex-based terms in medicine and would force healthcare entities to provide and promote gender-transition procedures. *Florida v. Dep't of Health & Hum. Servs.*, 739 F. Supp. 3d 1091, 1107 (M.D. Fla. 2024). Nothing in the ACA "require[s] healthcare providers to perform novel 'gender-transition' procedures or force States to subsidize them." *Texas v. Becerra*, 739 F. Supp. 3d 522, 528 (E.D. Tex. 2024). Nor can the ACA be read to require self-selected pronouns, new curricula, or males in sex-specific spaces. *Florida*, 739 F. Supp. 3d at 1108–12.

In enacting the ACA, Congress accepted the common-sense principle that biology matters in providing equal healthcare opportunities for men and women. This view doesn't fit with the 2024 Rule's attempt to redefine "sex" to mean "gender identity."

### B. Title IX does not authorize HHS to redefine sex discrimination to cover gender-identity discrimination.

Title IX also lacks a gender-identity mandate. It states: "No person … shall, on the basis of sex, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a).

In 1972, "on the basis of sex" referred to binary physical differences between males and females. *Id*. For instance, Title IX lets schools go from admitting "students of one sex" to admitting "students of both sexes." 20 U.S.C. § 1681(a)(2). This language cannot be read to encompass gender identity. *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377, 398 (W.D. La. 2024), *stay denied by* 2024 WL 3452887 (5th Cir. July 17, 2024), *and* 603 U.S. 866 (2024) (per curiam).

Title IX cannot be read to encompass "gender identity" discrimination because it allows—and sometimes requires—"consideration of sex" to ensure equal sex-based opportunities. *Tennessee v. Becerra*, 739 F. Supp. 3d at 486. A ban on gender-identity discrimination would require such practices as allowing men in women's private spaces. *Florida*, 739 F. Supp. 3d at 1108–12. But Title IX is more measured: it forbids "treating women worse than men and vice versa." *Texas v. Becerra*, 739 F. Supp. 3d at 528. Sex "discrimination" means not any sex distinction but "a negative distinction or differential treatment for the wrong reasons," *Texas v. Cardona*, 743 F. Supp. 3d 824, 873 (N.D. Tex. 2024), measured in context, *Tennessee v. Becerra*, 739 F. Supp. 3d at 485.

Title IX allows sex distinctions where men and women are not similarly situated in education. *Adams*, 57 F.4th at 814. In Title IX, Congress said "nothing contained herein shall be construed to prohibit

… separate living facilities for the different sexes." 20 U.S.C. § 1686. This is no mere exception to § 1681(a)'s nondiscrimination mandate. Congress titled it an "[i]nterpretation" principle. So § 1681(a), too, must "be construed" to allow sex distinctions. Section 1686 "reinforces what [§ 1681(a)'s] nouns and verbs independently suggest," *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation omitted)—that § 1681(a) allows sex distinctions. *See* Scalia & Garner, *supra*, at 221–24.

Contemporary interpreters agree. The Title IX regulations adopted soon after Title IX's passage cited § 1681(a)—not § 1686—as their authority for sex-specific restrooms and sports. *See* Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving or Benefiting from Federal Financial Assistance, 40 Fed. Reg. 24128, 24137, 24141 (June 4, 1975). So § 1681(a) allows for well-established, biology-based distinctions in contexts like sports, showers, locker rooms, and restrooms. *See Tennessee v. Becerra*, 739 F. Supp. 3d at 482. As Title IX's principal sponsor understood, the law must respect relevant differences between men and women. 117 Cong. Rec. 30,407 (1971) (statement of Sen. Bayh) (Title IX would not require co-ed sports teams or locker rooms); 118 Cong. Rec. 5807 (1972) (statement of Sen. Bayh) (Title IX would respect personal privacy in athletic facilities).

This principle applies all the more in healthcare—a field driven by biological reality. Title IX allows schools to consider sex-based differences to provide single-sex (1) sex education, 34 C.F.R. § 106.34(a)(3); (2)

"toilet, locker room, and shower facilities," *id.* § 106.33; (3) "physical education classes," *id.* § 106.34(a)(1); (4) "[sports] teams," *id.* § 106.41(b); and (5) athletic "competition[s]," *id.* § 106.41(c). None of this can be reconciled with a reading of Section 1557 that would force doctors to treat boys as girls, or chestfeeding men as breastfeeding mothers, as the 2024 Rule would do. If schools may notice sex-based differences to assign sex-specific restrooms and physical-education classes, surely medical clinics may notice sex to provide biology-driven, sex-specific healthcare.

After all, in places like showers, sports, and operating rooms, sex determines whether individuals are similarly situated because it "is the relevant respect"—the "sole characteristic on which" equal-opportunity "interests … are based." *Adams*, 57 F.4th at 803 n.6 (citation modified). If Title IX allowed gender identity to supersede sex, its implementing regulations allowing sex-specific spaces would be rendered contrary to law. Title IX "make[s] sense only if" it does not include a gender-identity mandate that would place the statute at war with itself. *See Texas v. Becerra*, 739 F. Supp. 3d at 534. This tracks with decades of cases interpreting Title IX to permit and sometimes require sex distinctions to ensure equal sex-based opportunities in education. *E.g.*, *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 973 (9th Cir. 2010); *Pederson v. La. State Univ.*, 213 F.3d 858, 871, 878 (5th Cir. 2000).

For the same reasons that the Biden administration's Department of Education exceeded its authority in twisting Title IX to impose a gender-identity mandate, the 2024 Rule's gender-identity mandate (including through its "sex stereotypes" clause) should be held unlawful and set aside. *Dep't of Educ. v. Louisiana*, 603 U.S. at 867; *Texas v. Cardona*, 743 F. Supp. 3d at 869–85; *Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 839 (E.D. Tenn. 2022); *see also Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-CV-00461-O, 2025 WL 1782572, at *4 (N.D. Tex. Feb. 19, 2025).

## C. *Bostock* does not control Section 1557 or Title IX, and *Skrmetti* explains why.

In the 2024 Rule, HHS relied on *Bostock* to conclude that failing to facilitate gender-transition practices violates Section 1557. *See, e.g.*, 89 Fed. Reg. at 37574. But *Bostock*'s interpretation of Title VII didn't conflate gender identity with sex. And accepting that premise would invalidate all sex distinctions in healthcare, inconsistent with the ACA and Section 1557's incorporation of Title IX's sex-based protection.

Title VII "is a vastly different statute" from Section 1557 and Title IX. *Jackson*, 544 U.S. at 175. Its focus on employment decisions, where an individual's sex is generally irrelevant, differs from Section 1557 and Title IX's respective focus on healthcare and educational opportunities. An individual's sex is often a crucial consideration in gynecology offices, operating rooms, and schools. Indeed, "while an employer risks Title VII

liability when it makes distinctions among employees based on sex," a medical provider and "education program risks … liability when it fails to distinguish between [those it serves] based on sex." *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 63 (2d Cir. 2023) (Menashi, J., concurring) (emphasis omitted).

To ensure equal sex-based opportunities, schools and medical providers "must consider sex." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021). Not so in hiring or firing under Title VII, which is the outer limit of *Bostock*'s reach. *Tennessee v. Becerra*, 739 F. Supp. 3d at 482; *Bostock*, 590 U.S. at 681 ("we do not purport to address bathrooms, locker rooms, or anything else of the kind. The only question before us is whether an employer who fires someone simply for being homosexual or transgender" violates Title VII); *accord Roe v. Critchfield*, 131 F.4th 975, 991 (9th Cir. 2025). *Bostock*'s "text-driven reasoning applies only to Title VII" hiring-and-firing context. *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 484 (6th Cir. 2023); *see also Roe*, 131 F.4th at 991 (quoting *Bostock*, 590 U.S. at 681). For in healthcare, as in education, "biological sex is often relevant and sometimes critical." *Texas v. Becerra*, 739 F. Supp. 3d at 535.

The Supreme Court's more recent decision in *Skrmetti* precludes HHS's application of *Bostock* to Section 1557. There, the Supreme Court held that a state's ban on performing gender-transition procedures on kids did not discriminate based on sex. 605 U.S. at 521–22. "Under the

logic of *Bostock*, then, sex is simply not a but-for cause of" the ban. *Id.* at 522. But as the district court correctly concluded in the related States' case, by banning gender-identity discrimination the 2024 Rule requires clinics and doctors to provide those procedures. *Tennessee*, 807 F. Supp. 3d at 625–26. This cannot be reconciled with *Skrmetti*, because when MCC and other entities decline to perform or refer for such procedures for kids their actions cannot be considered sex discrimination any more than a state's ban on those procedures. *Id.* at 625–26 (discussing *Skrmetti*, 605 U.S. at 521–22). *See also Anderson v. Crouch*, 169 F.4th 474, 492–93 (4th Cir. 2026) (applying *Skrmetti* to Section 1557); *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646, 669–70 (9th Cir. 2025) (under *Skrmetti*, failure to cover gender transition is not sex discrimination).

Many litigants have tried, and failed, to show that Title IX prohibits policies that appropriately consider the biology of sex. When some schools cut men's sports teams to come into compliance with Title IX, male athletes sued for sex discrimination—and lost. *E.g.*, *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 615 (6th Cir. 2002); *Chalenor v. Univ. of N.D.*, 291 F.3d 1042, 1047 (8th Cir. 2002). The proper statutory analysis of Title IX doesn't require parsing the difference between the statutes' causation standards: "on the basis of" in Title IX, 20 U.S.C. § 1681(a), and "because of" in Title VII, 42 U.S.C. § 2000e-2(a).

The difference between these standards underscores why *Bostock* cannot extend beyond hiring and firing. *Bostock* held that "because of … sex" means but-for causation. *Bostock*, 590 U.S. at 656, 661. But "[w]hile 'because of' and 'on the basis of' are similar phrases, the use of the indefinite article—'the'—indicates that *the* basis of the discrimination must be the student's sex." *M.K. ex rel. Koepp v. Pearl River Cnty. Sch. Dist.*, No. 1:22-cv-25, 2023 WL 8851661, at *8 (S.D. Miss. Dec. 21, 2023), *aff'd by* 144 F.4th 801 (5th Cir. 2025); *see also Tennessee v. Becerra*, 739 F. Supp. 3d at 477–82; *Neese v. Becerra*, 640 F. Supp. 3d 668, 679 (N.D. Tex. 2022). Sex must be more than just *one* cause—it must be *the* cause—to trigger Title IX. Unlike *Bostock*'s hiring-and-firing rationale, Title IX *does* operate to "ensure[ ] equal treatment between groups of men and women," *Bostock*, 590 U.S. at 671, that is, "to achieve classwide equality between the sexes[,]" *id.* at 663–64, which a but-for causation test would preclude. As *Skrmetti* concluded, "sex is simply not a but-for cause" of a position against gender transition procedures. 605 U.S. at 522.

Consequently, neither Section 1557 nor the Title IX language it references can be interpreted to allow HHS to ban gender identity discrimination in healthcare, whether through the "sex stereotypes" clause of the 2024 Rule or otherwise.

## CONCLUSION

For these reasons, MCC asks the court to (a) reverse the district court's dismissal of its case and denial of its summary judgment motion, and (b) either enter summary judgment or remand with instructions to enter summary judgment for MCC, vacating the 2024 Rule's "sex stereotypes" clause, § 92.101(a)(2)(v), under 5 U.S.C. § 706.

Dated: April 28, 2026

Respectfully submitted,

*s/Matthew S. Bowman*

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Matthew S. Bowman
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
mbowman@ADFlegal.org
jbursch@ADFlegal.org

Natalie D. Thompson
ALLIANCE DEFENDING FREEDOM
7250 Dallas Parkway
Suite 700
Plano, TX 75024
(469) 894-8700
nthompson@ADFlegal.org

Julie Marie Blake
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jblake@ADFlegal.org

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this brief contains 9,544 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: April 28, 2026

*s/Matthew S. Bowman*
Matthew S. Bowman
*Counsel for Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026 I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/ Matthew S. Bowman*
Matthew S. Bowman
*Counsel for Appellant*