No. 26-60101

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

McComb Children's Clinic, Ltd., a Mississippi Corporation,
*Plaintiff-Appellant,*

*v.*

Robert F. Kennedy, Jr., Secretary, U.S. Department of Health &
Human Services, in his official capacity, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Mississippi, No. 5:24-cv-00048-LG-ASH

**Brief of the States of Missouri, Alabama, Arkansas, Georgia, Idaho, Indiana, Kansas, Louisiana, Nebraska, and South Carolina as Amici Curiae in Support of Plaintiff-Appellant**

Catherine L. Hanaway
　*Attorney General of Missouri*
Louis J. Capozzi, III
　*Solicitor General*

William J. Seidleck
　*Principal Deputy Solicitor General*
Graham D. Miller
　*Deputy Solicitor General*
Missouri Attorney General's Office
P.O. Box 899
Jefferson City, MO 65102
Telephone: (314) 340-7652
E-mail: graham.miller@ago.mo.gov
*Counsel for Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS

Under this Court's Rule 28.2.1 and Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A), governmental parties are not required to supply a certificate of interested persons.

> */s/ Graham D. Miller*
> Graham D. Miller
> *Counsel for Amici Curiae*

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..........................................1

Table of Contents...................................................................2

Table of Authorities.................................................................3

Interests of Amici Curiae, Introduction,  and Summary of Argument....5

Argument .............................................................................7

    I.    The "sex stereotype" provision overlaps with the "gender identity" provision, and refusing to vacate the sex-stereotype provision threatens irreparable harm on MCC. ...............................................................................8

        A.    Only granting partial relief for overlapping rules does not fully abate the harm. ...............................................10

        B.    Even if MCC does not face an immediate harm from the "sex stereotypes" provision, allowing it to linger may work future irreparable harm on MCC.........................12

    II.    The change in presidential administrations should not moot out this case. ................................................................15

Conclusion.........................................................................19

CERTIFICATE OF SERVICE................................................22

CERTIFICATE OF COMPLIANCE .......................................22

### TABLE OF AUTHORITIES

**Cases**

*Babbitt v. Farm Workers,*
  442 U.S. 289 (1979) ...............................................................15

*Biden v. Nebraska,*
  600 U.S. 477 (2023) ............................................................8, 14

*Chafin v. Chafin,*
  568 U.S. 165 (2013) ...............................................................15

*FBI v. Fikre,*
  601 U.S. 234 (2024) ...........................................................18, 19

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ...............................................................17

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA,*
  313 F.3d 852 (4th Cir. 2002) ...................................................16

*Franciscan All., Inc. v. Becerra,*
  47 F.4th 368 (5th Cir. 2022)................................................14, 19

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) .....................................................16, 18, 19

*Knox v. Serv. Emps. Int'l Union, Local,*
  *1000,* 567 U.S. 298 (2012) .....................................................15

*Missouri v. Biden,*
  112 F.4th 531 (8th Cir. 2024).......................................9, 10, 12, 14

*Missouri v. Biden,*
  738 F. Supp. 3d 1113 (E.D. Mo. 2024) .....................................9, 10

*Missouri v. Trump,*
  128 F.4th 979 (8th Cir. 2025)..........................................8, 9, 12, 13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) .................................................................17

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) .............................................................................15

*Tennessee v. Kennedy,*
  807 F. Supp. 3d 613 (S.D. Miss. 2025).................................................. 7

*West Virginia v. EPA,*
  597 U.S. 697 (2022) .............................................................................18

**Regulations**

45 C.F.R. § 92.101(a)(2) ............................................................................7

Nondiscrimination in Health Programs and Activities,
  89 Fed. Reg. 37,522 (May 6, 2024)......................................................11

### INTERESTS OF AMICI CURIAE, INTRODUCTION, AND SUMMARY OF ARGUMENT[1]

Amici curiae are the States of Missouri, Alabama, Arkansas, Georgia, Idaho, Indiana, Kansas, Louisiana, Nebraska, and South Carolina.

Missouri has a strong interest in the outcome of this litigation given a similar issue pending before the Eastern District of Missouri, *see Missouri v. Kennedy*, No. 4:24-cv-00937-JAR (E.D. Mo.), and agrees with the analysis of the McComb's Children's Clinic (MCC).  In addition to MCC's points, Missouri writes to discuss the negative impact on States when courts do not grant complete relief regarding a challenged agency action or when the federal government insists that a case is moot because of a change in presidential administrations.  The student-loan litigation necessitated by the unlawful actions of the Biden Administration exemplifies the problem.

First, in the second student-loan litigation, the district court only enjoined enforcement of part of the student-loan forgiveness plan.  But

---

[1] This brief is filed under Federal Rule of Appellate Procedure 29(a)(2).  Although consent is not required, both Appellant and Appellees consented to the filing of this brief.

its ruling ignored how the plan was effectuated by interrelated provisions. Moreover, the partial relief allowed the previous administration to circumvent the court's ruling. This incomplete relief left the States open to harm. MCC faces the same harm here. The "sex stereotype" provision overlaps with the now-vacated "gender identity" provision and could allow a future administration to reinstate this unlawful gender-identity rule through this lingering sex-stereotype provision.

Second, in the third student-loan litigation, the federal government has moved to dismiss the case as moot. However, instead of arguing that there is no effectual relief, the government argues that the loan-forgiveness rule was not a final agency action. With this mismatch of jurisdictional arguments, the government seeks to avoid a merits ruling, but allowing administrative regulations to evade review does not aid the rule of law. Similarly, the federal government has argued that this case is moot because MCC no longer faces a credible threat of enforcement.

This Court should not allow Health and Human Services to evade a ruling on the merits by ignoring the scope of the agency's rule and by

allowing the government to mishmash jurisdictional doctrines.

## ARGUMENT

The district court erred by holding this case is moot based on how it understood the scope of its ruling in another case, *Tennessee v. Kennedy*, 807 F. Supp. 3d 613 (S.D. Miss. 2025). The "sex stereotypes" provision encompasses elements of the "gender identity" provision, *see* 45 C.F.R. § 92.101(a)(2)(iv)–(v), so vacating the "gender identity" portion of the rule cannot moot out MCC's dispute as to the "sex stereotypes" provision.

States have readily experienced the negative consequences of similar district court reasoning. Missouri's experiences fighting to enjoin implementation of the illegal student-loan programs of the previous administration are emblematic of the problems highlighted by this case. First, allowing portions of overlapping administrative rules to remain invites remaining portions of the rule to continue working irreparable harm on plaintiffs—as well as enticing a future administration to use old rules to fill regulatory gaps. Second, courts should not permit the government to escape a merits ruling by suggesting that a change in presidential administrations can moot the case. This Court should clarify

7

the scope of relief for when a party challenges an administrative rule and not allow the government to dodge a merits ruling based on (reversible) policy changes.

## I.     The "sex stereotype" provision overlaps with the "gender identity" provision, and refusing to vacate the sex-stereotype provision threatens irreparable harm on MCC.

Missouri's second student-loan litigation exemplifies the problem with the district court's dismissing MCC's "sex stereotypes" provision claim. After the last presidential administration failed at its first student-loan attempt, *see Biden v. Nebraska*, 600 U.S. 477 (2023), the Department of Education engaged in a second attempt, the SAVE Plan. The SAVE Plan expanded the Department's existing income-contingent repayment plans and had three interlocking provisions to effectuate forgiveness. First, the SAVE Plan increased borrower eligibility by increasing participation for borrowers at up to 225% of the poverty line—up from 150% under the existing ICR plans. *Missouri v. Trump*, 128 F.4th 979, 987 (8th Cir. 2025). Second, the SAVE Plan significantly reduced borrowers' monthly payments and canceled any accrual of interest if this reduced payment did not cover the interest. *Id.* A significant number of borrowers would have a monthly "payment" of $0.

8

*Id.* at 988. And lastly, the SAVE Plan accelerated loan forgiveness to ten years from the previous twenty to twenty-five years. *Id.*

Despite these three provisions of the SAVE Rule all working together, the district court found that only the rule's final loan-forgiveness provision inflicted a cognizable irreparable harm on the States. *Missouri v. Biden*, 738 F. Supp. 3d 1113, 1155–56 (E.D. Mo. 2024). Therefore, the district court limited its preliminary injunction to the forgiveness provision. *Id.*

No sooner had the district court only enjoined enforcement of the ultimate forgiveness provision than the previous administration established "a new so-called 'hybrid rule'" to work around the district court's injunction. *Missouri v. Biden*, 112 F.4th 531, 535 (8th Cir. 2024) (per curiam). Under the "hybrid rule," the Department of Education "combine[d] the parts of SAVE" that fell outside the injunction's scope, "such as the payment-threshold provisions and nonaccrual of interest, with the forgiveness-of-principal provisions in" a previously existing plan. *Id.* The result: the government "continue[d] to forgive loans for borrowers enrolled in SAVE," with the only difference being that ultimate loan forgiveness would occur after "at least 20 years, as opposed to as

early as 10 years." *Id.* The government conceded as much. *Id.* This hybrid plan, created in response to the district court's preliminary injunction, "effectively rendered that injunction a nullity," as the government "work[ed] the same irreparable harm on [the States] that the district court sought to enjoin." *Id.* at 535, 538.

Staring down this nearly identical irreparable harm, the district court denied the States' request for expanded relief, forcing the States to seek emergency relief from the Eighth Circuit. Although the Eighth Circuit stepped in to broaden the injunction and provide complete relief, *see id.* at 538, this experience highlights a couple of issues with the district court's ruling in this case.

### A.    Only granting partial relief for overlapping rules does not fully abate the harm.

In the student-loans case, the district court reasoned that only the loan-forgiveness provisions harmed Plaintiff States—so there was no "cognizable injury related to the other provisions." *Missouri v. Biden*, 738 F. Supp. 3d at 1155. But not enjoining the enforcement of interrelated provisions did not grant the States full relief and was an error. *See Missouri v. Biden*, 112 F.4th at 535. Similarly, here the district court did not grant MCC full relief, dismissing MCC's "sex

10

stereotype" claim because the *Tennessee* case "granted the relief MCC now seeks." ROA.817.  According to the district court, this "sufficiently redressed the harm."  ROA.818.  However, like in the student-loans litigation, the district court failed to account for how the provisions of the rule work together.

In the student-loans case, three interrelated provisions operated in conjunction to make up the student-loan forgiveness plan.  Here, the analysis is simpler.  The "sex stereotype" and now-vacated "gender identity" provisions do not work together to create a larger scheme, rather they regulate overlapping conduct.  *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522, 37,578 (May 6, 2024) ("[D]iscrimination against a person because they are transgender, or because they identify in some other way that is inconsistent with their sex assigned at birth . . . is also based on requiring persons to conform to stereotypical norms about sex and gender."); *id.* at 37,574 ("[T]his rule prohibits discrimination against individuals who do not conform with stereotypical notions of how an individual is expected to present as male or female, regardless of gender identity.").  Moreover, these comments are HHS's *only* use of "sex stereotypes" in explaining its rule.  *See id.*

11

37,571–78.  Given the references to gender identity, this is evidence that this provision's aim is duplicative of gender identity discrimination.  *See Missouri v. Trump*, 128 F.4th at 998 (stating that SAVE Rule's references to avoiding default provided "strong evidence" that other provisions were part of the SAVE Rule).

Thus, there is "almost no practical difference" between these two terms.  *See Missouri v. Biden,* 112 F.th at 538.  Although vacating the "gender identity" rule provided MCC partial relief, a future government may "work the same irreparable harm on [MCC] that the district court sought" to prevent through the "sex stereotype" provision.  *See id.* Therefore, this Court should reverse to prevent MCC from suffering this irreparable harm.

### B.  Even if MCC does not face an immediate harm from the "sex stereotypes" provision, allowing it to linger may work future irreparable harm on MCC.

In justifying its mootness ruling, the district court explained that for MCC to have a live claim over the "sex stereotype" provision, HHS "would essentially" have to "reinstat[e] the 'gender identity' subsection in the Rule without Notice and Comment" under the "sex stereotype" provision.  ROA.817.   Although these provisions are overlapping and

thus warrant relief now, even assuming that they are not, letting this provision linger invites harm on MCC. Missouri's student-loan litigation highlights the problem.

After the district court partially enjoined implementation of the student-loan forgiveness plan, the Department of Education "resuscitated the forgiveness provisions of the 2015 [rule] to fill in the gap created after the SAVE Rule's forgiveness was enjoined." *Missouri v. Trump*, 128 F.4th at 998. This previous rule had been in place for nearly ten years but had never been used in such an extraordinary manner to authorize loan forgiveness in excess of the Secretary's statutory authority. *See id.* Nonetheless, the federal government sought to revive this provision from the old rule, which "suffer[ed] from the same legal errors as the [challenged SAVE Plan]"—especially when combined with the other remaining SAVE Plan elements. *Id.* Therefore, the Eighth Circuit "broadened" the preliminary injunction to enjoin the entirety of this illegal action—implementation of the new and the old rule. *Id.*

Here, MCC faces similar potential for future harm. Refusing to vacate "sex stereotype" provision could allow a future administration to

"resuscitate" the provision to fill a "gap" in another rulemaking. *See id.* No one could have predicted that the previous student-loan rule could have been transformed into a rule reshaping a segment of the nation's economy. *See Nebraska*, 600 U.S. at 505–07. Likewise, some court "could just as easily breathe new life into the remaining fragment[] of the [gender-identity rule] as well" if a future rule were challenged. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375 (5th Cir. 2022). Based on the history of the gender-identity rules under Section 1557, *see generally id.* at 371–74 (recounting history), this seems almost guaranteed. Like the lingering student-loan forgiveness rule, a revival of this rule would work harm on MCC. There is no reason why MCC should have to wait around until then to see if this harm will materialize. Just as rules "flicker[ing] in and out of existence is detrimental to the rule of law," *id.* at 375, so is allowing old rules to breathe new life into challenged programs to circumvent court rulings with creative agency interpretation, *see Missouri v. Biden*, 112 F.4th at 535. This Court should take the opportunity to clarify this "important agency rule[]." *Franciscan All.*, 47 F.4th at 375.

14

## II. The change in presidential administrations should not moot out this case.

Although the district court's order does not justify its mootness decision based on the change in presidential administrations, it is lurking beneath the surface. *See* ROA.817 (suggesting that Notice and Comment would be necessary to reinstate the "gender identity" provision through the "sex stereotype" provision). Defendants, however, have been more direct in arguing that MCC faces no credible threat of enforcement based on the change in administrations so this case is moot. *See* R. Doc. 62 at 8–14.[2] Defendants confuse standing and mootness. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979))); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("[A] case 'becomes moot only when it is impossible for a court to grant any effectual

---

[2] Defendants previously argued that MCC lacked *standing* because there was no credible threat of enforcement based on other litigation. *See* R. Doc. 36 at 6–11.

relief whatever to the prevailing party.'" (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012))).

The Supreme Court has cautioned against conflating the two: "The plain lesson . . . is that there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Yet by doing so, the federal defendants appear to attempt to avoid a ruling on the merits.

This mix-matching of jurisdictional arguments is not unique to this case. For example, in another student loan case (the third forgiveness attempt), the federal government moved to dismiss the student-loans case as moot nearly two years after the district court had issued the preliminary injunction. *See* Mot. to Dismiss, *Missouri v. Dep't of Education*, No. 4:24-cv-01316-MTS (E.D. Mo. Dec. 22, 2025), Doc. 111. Although phrased as mootness, the federal government largely re-litigated whether the student-loan forgiveness plan was a final agency action, not whether there was any effectual relief the court could offer. *See id.* at 2–5. That is not a mootness inquiry. *See Flue-Cured Tobacco*

16

*Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 857 (4th Cir. 2002) (holding that whether a case presents "final agency action" should precede a standing inquiry). By contesting this standing point phrased as mootness, the federal government appears to be seeking to avoid a ruling on the merits of the third student-loan forgiveness program. This continues to work harm on Missouri through prolonged litigation as Missouri works to ensure a merits ruling on this unlawful program.

There is no added wrinkle of whether the "sex stereotype" provision is a final agency action here—only the dispute about whether this rule presents a cognizable injury to MCC. It did and it does. The federal government can argue that there is presently no credible threat of enforcement, but that is not the relevant inquiry. The pertinent question here is whether the offending provision is still on the books. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–15 (2009) ("An agency may not . . . simply disregard rules that are still on the books."). A new presidential administration cannot rescind the rule by Executive Order without a going through the same process as it did when in promulgated the rule in the first instance. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("[A]n agency

17

changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance.").

But even if the recent Executive Orders could show no credible threat of enforcement (they cannot), they nonetheless cannot withstand the voluntary cessation exception to mootness. The Supreme Court recently elucidated the cessation doctrine in *FBI v. Fikre*, 601 U.S. 234 (2024). There, the Court made clear that, under the voluntary cessation doctrine, a case is not moot where the government abandons a challenged practice unless the government satisfies a "formidable burden" of showing a challenged practice will not recur. *Id.* at 241 (quoting *Friends of the Earth*, 528 U.S. at 190). The showing must be "absolutely clear," *Friends of the Earth*, 528 U.S. at 189, and Defendants' burden is "no less" because they are the Government, *Fikre*, 601 U.S. at 241.

Defendants cannot meet their "formidable burden." *Id.* First, Defendants seem to suggest that challenges to agency actions become moot whenever a new presidential administration commits to not enforcing a prior challenged rule. But the Supreme Court expressly rejected that argument. *West Virginia v. EPA*, 597 U.S. 697, 720 (2022).

Second, the Executive Orders cited below are "policy" guidance. *See* R. Doc. 62 at 8–14. These general policy disavowals "fall[] short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Fikre*, 601 U.S. at 242. Allowing this rule to escape review here would mean that every time a presidential administration changes, the new administration could simply issue an Executive Order changing the administration's general policy to make any challenges moot. "[A]gency rules [would] flicker in and out of existence." *See Franciscan All.*, 47 F.4th at 375 (quoting *Friends of the Earth*, 528 U.S. at 190). This would be diametrically opposed to the "formidable burden" defendants' bear. *Fikre*, 601 U.S. at 241.

Therefore, this Court should not allow the federal government to obfuscate a merits decision on these grounds.

## CONCLUSION

The Court should reverse the district court's order.

Dated: May 5, 2026          Respectfully submitted,

**CATHERINE L. HANAWAY**
*Attorney General of Missouri*

LOUIS J. CAPOZZI, III
*Solicitor General*

*/s/ Graham D. Miller*
WILLIAM J. SEIDLECK
  Principal Deputy Solicitor General
GRAHAM D. MILLER
  Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (314) 340-7652
Fax (573) 751-0774
Graham.Miller@ago.mo.gov

*Counsel for Amici Curiae*

*Counsel for Additional Amici States*

| | |
|---|---|
| Steve Marshall<br>Attorney General of Alabama | Kris W. Kobach<br>Attorney General of Kansas |
| Tim Griffin<br>Attorney General of Arkansas | Liz Murrill<br>Attorney General of Louisiana |
| Chris Carr<br>Attorney General of Georgia | Michael T. Hilgers<br>Attorney General of Nebraska |
| Raúl R. Labrador<br>Attorney General of Idaho | Alan Wilson<br>Attorney General of South Carolina |
| Theodore E. Rokita<br>Attorney General of Indiana | |

## CERTIFICATE OF SERVICE

I, Graham D. Miller, hereby certify that the foregoing brief has been filed with the Clerk of Court using the Court's electronic filing system, which sent notification of such filing to all counsel of record.

Dated: May 5, 2025                    */s/ Graham D. Miller*
                                       Graham D. Miller
                                       *Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32, it contains 2,896 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface, including serifs, using Microsoft Word 2016, in Century Schoolbook 14-point font.

Dated: May 5, 2025                    */s/ Graham D. Miller*
                                       Graham D. Miller
                                       *Counsel for Amici Curiae*