# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

MCCOMB CHILDREN'S CLINIC, LIMITED, a Mississippi Corporation,

*Plaintiff-Appellant,*

v.

ROBERT F. KENNEDY, JR., Secretary, U.S. Department of Health & Human Services, in his official capacity; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; ANTHONY ARCHEVAL, in his official capacity as Acting Director of the Office for Civil Rights of the United States Department of Health & Human Services; OFFICE FOR CIVIL RIGHTS OF THE UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Mississippi
Case No. 5:24-cv-48

## APPELLANT'S REPLY BRIEF

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Julie Marie Blake
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
jblake@ADFlegal.org

Matthew S. Bowman
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
mbowman@ADFlegal.org
jbursch@ADFlegal.org

Natalie D. Thompson
ALLIANCE DEFENDING FREEDOM
7250 Dallas Parkway, Suite 700
Plano, TX 75024
(469) 894-8700
nthompson@ADFlegal.org

*Counsel for Appellant*

# TABLE OF CONTENTS

Table of Authorities..................................................................... iii

Introduction and Summary of Argument .............................................1

Argument.....................................................................................3

I.  MCC challenged the sex-stereotypes mandate...............................3

    A.  The complaint explicitly says it is challenging the sex-stereotypes mandate. ..........................................................3

        1.  The complaint explains that HHS imposed multiple overlapping gender-identity mandates, including through sex stereotypes................................3

        2.  The complaint defines its requested scope of relief as including the sex-stereotypes mandate. ..................4

        3.  The request for relief repeats MCC's request to vacate all the rule's gender-identity mandates............4

    B.  The complaint satisfies this Court's liberal pleading standard. ................................................................6

        1.  Explicit language satisfies notice pleading. .................6

        2.  MCC's claims incorporate its description of the overlapping gender-identity mandates.........................8

        3.  *Franciscan Alliance* generously interpreted a complaint to grant needed relief against gender-identity mandates in an earlier Section 1557 rule......10

    C.  The Government's cases do not apply..................................12

II.  The rule's sex-stereotypes mandate exists today. ........................12

    A.  The sex-stereotypes mandate has not been vacated, repealed, or otherwise negated. ...........................................13

        1.  The *Tennessee* vacatur was provision-specific.............13

2. The *Tennessee* declaratory judgment would include sex stereotypes, but it protects only the parties to that case.......................................14

B. There's nothing "redundant" about granting MCC's request to vacate the sex-stereotypes clause.......................15

1. The *Tennessee* declaratory judgment only protects the parties in that case, not MCC..............................15

2. Trump Administration policy is no substitute for vacatur..................................................................16

III. The sex-stereotypes mandate imposes a gender-identity mandate distinct from the provisions *Tennessee* vacated. ............20

A. The 2024 Rule says its sex-stereotypes mandate prohibits gender-identity discrimination. ...........................20

B. Binding requirements in a preamble are regulations subject to APA judicial review. .............................................21

C. Recent history shows why MCC needs vacatur of the sex-stereotypes clause.......................................................21

IV. This Court should reach the merits and direct entry of summary judgment for MCC. ....................................................22

A. The district court effectively reached the merits. ...............23

B. The Government does not dispute the merits. .....................25

C. The Government identifies no issue worth consideration on remand....................................................26

Conclusion ..........................................................................................27

Certificate of Compliance.................................................................28

Certificate of Service .......................................................................29

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Asapansa-Johnson Walker v. Azar,*
480 F. Supp. 3d 417 (E.D.N.Y. 2020) ..............................................22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................9

*Berry v. Board of Supervisors of Louisiana State University,*
715 F.2d 971 (5th Cir. 1983) .......................................................8, 9

*Carroll v. Fort James Corp.,*
470 F.3d 1171 (5th Cir. 2006) ........................................................8

*Central & South West Services, Inc. v. EPA,*
220 F.3d 683 (5th Cir. 2000) .....................................................2, 21

*Chemical Waste Management v. EPA,*
869 F.2d 1526 (D.C. Cir. 1989)........................................................2

*Contender Farms, L.L.P. v. United States Department of
Agriculture,*
779 F.3d 258 (5th Cir. 2015) ........................................................19

*Data Marketing Partnership, LP v. United States Department of
Labor,*
45 F.4th 846 (5th Cir. 2022).........................................................15

*EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank,
NA,*
467 F.3d 466 (5th Cir. 2006) ................................................. 1, 6, 7

*F.B.I. v. Fikre,*
601 U.S. 234 (2024) ......................................................................20

*Franciscan Alliance, Inc. v. Becerra,*
47 F.4th 368 (5th Cir. 2022)................................................. passim

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000) .......................................................................17

*General Electric Capital Corp. v. Posey*,
415 F.3d 391 (5th Cir. 2005) ...........................................................6

*Haaland v. Brackeen*,
599 U.S. 255 (2023) .......................................................................16

*In re Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) ...........................................................9

*Larsen v. United States Navy*,
525 F.3d 1 (D.C. Cir. 2008) ...........................................................12

*Life Insurance Company of Virginia v. Murray Investment Company*,
646 F.2d 224 (5th Cir. 1981) ...........................................................9

*Man Roland, Inc. v. Kreitz Motor Express, Inc.*,
438 F.3d 476 (5th Cir. 2006) .........................................................23

*McGrew v. Duncan*,
937 F.3d 664 (6th Cir. 2019) .........................................................12

*National Association of Manufacturers v. Department of Defense*,
583 U.S. 109 (2018) .......................................................................14

*National Infusion Center Association v. Becerra*,
116 F.4th 488 (5th Cir. 2024).........................................................14

*Ozee v. American Council on Gift Annuities, Inc.*,
143 F.3d 937 (5th Cir. 1998) .........................................................26

*PHH Mortgage Corp. v. Old Republic National Title Insurance Company*,
80 F.4th 555 (5th Cir. 2023).........................................................23

*Richards v. Jefferson County*,
517 U.S. 793 (1996) .......................................................................15

*Ruiz v. Brennan*,
    851 F.3d 464 (5th Cir. 2017) ......................................................... 3

*SEC v. Box*,
    721 F.2d 134 (5th Cir. 1983) ......................................................... 6

*Space Exploration Technologies Corp. v. NLRB*,
    151 F.4th 761 (5th Cir. 2025) .................................................... 2, 24

*Speech First, Inc. v. McCall*,
    138 F.4th 219 (5th Cir. 2025) ...................................................... 18

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ........................................................................ 6

*Tennessee v. Kennedy*,
    807 F. Supp. 3d 613 (S.D. Miss. 2025) ......................... 7, 13, 14, 23

*Tennessee v. United States Department of Education*,
    615 F. Supp. 3d 807 (E.D. Tenn. 2022) ....................................... 19

*Texas Medical Association v. HHS*,
    110 F.4th 762 (5th Cir. 2024) ...................................................... 19

*Texas v. Biden*,
    20 F.4th 928 (5th Cir. 2021) ........................................................ 15

*Texas v. Biden*,
    597 U.S. 785 (2022) ...................................................................... 15

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) ....................................................... 21

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ................................................................ 17, 20

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ...................................................................... 14

*Tucker v. Gaddis*,
    40 F.4th 289 (5th Cir. 2022) ....................................................... 18

*United States for Use & Benefit of Canion v. Randall & Blake,*
    817 F.2d 1188 (5th Cir. 1987) ..........................................................8

*United States Navy Seals 1-26 v. Biden,*
    72 F.4th 666 (5th Cir. 2023)................................................... 19, 20

*United States v. Mendoza,*
    464 U.S. 154 (1984) ........................................................................16

*Whitman-Walker Clinic, Inc. v. HHS,*
    485 F. Supp. 3d 1 (D.D.C. 2020) ...................................................22

## **Rules**

Fed. R. Civ. P. 8(a)(2) ...........................................................................6

Fed. R. Civ. P. 54(c) ............................................................................10

## **Regulations**

45 C.F.R. § 92.101 ....................................................................... passim

Nondiscrimination in Health Programs and Activities, 89 Fed. Reg.
    37522 (May 6, 2024) ..................................................................2, 21

# INTRODUCTION AND SUMMARY OF ARGUMENT

The Government suggests that McComb Children's Clinic, Ltd. ("MCC") failed to challenge the 2024 Rule's "sex stereotypes" mandate, and denies that this gender-identity mandate still exists in the rule. The Government is wrong on both counts.

First, MCC explicitly challenged the 2024 Rule's sex-stereotypes nondiscrimination mandate and expressly asked the district court to vacate it. The Government suggests the complaint did not challenge the mandate *explicitly enough*. Gov.Br.17. But MCC challenged it plainly— and at length. ROA.025–26. The complaint explained how HHS intentionally embedded gender-identity under alternative theories in the rule—including "sex stereotypes." ROA.025 ¶¶ 73–74. And MCC sought vacatur of "any language or alternative theory in the rule" that the Government "may use" to target gender-identity discrimination. ROA.026 ¶ 78. MCC repeated this request in the prayer for relief. ROA.059. These allegations easily satisfy Federal Rule of Civil Procedure 8's "liberal notice-pleading standard." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). A plain reading of the complaint shows that MCC sought vacatur of the rule's "sex stereotypes" clause.

Second, the 2024 Rule undeniably still contains the sex-stereo-types mandate today. No court has vacated that provision, as the Government appears to accept. The agency has not rescinded it through

1

notice-and-comment rulemaking. Executive Orders cannot repeal it. And MCC received no other relief against it—though states received a declaratory judgment, MCC did not. A claim is not moot unless the relief already provided is "precisely the same" as the relief requested. *Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 767 n.5 (5th Cir. 2025) (citation modified). Declaratory judgment for another party is not the vacatur MCC seeks. *See* MCC.Br.26–28.

As a result, MCC's claim is not moot, and MCC is entitled to vacatur under the APA. The sex-stereotypes mandate adds gender-identity nondiscrimination to Section 1557. The 2024 Rule says so. Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37522, 37578, 37574 (May 6, 2024). A "declaration contained in the preamble to a final rule setting forth the Agency's final and binding interpretation of the statute qualifies as a reviewable regulation for purposes of judicial review." *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 689 n.2 (5th Cir. 2000) (citing *Chemical Waste Mgmt. v. EPA*, 869 F.2d 1526, 1533 (D.C. Cir. 1989)). And nothing has vacated or repealed this requirement.

Finally, this Court should direct entry of summary judgment for MCC. The district court did not disagree that the mandate is illegal; the court simply took the view that it had already given MCC the necessary relief. It had not. And the Government no longer disputes the merits.

There is nothing to decide on remand, so this Court should direct the court below to enter judgment for MCC.

## ARGUMENT

### I.    MCC challenged the sex-stereotypes mandate.

The Government first suggests that MCC "did not challenge 45 C.F.R. § 92.101(a)(2)(v) in their complaint." Gov.Br.16. MCC's pleadings show otherwise.

#### A.    The complaint explicitly says it is challenging the sex-stereotypes mandate.

This Court construes complaints based on their "plain language." *Ruiz v. Brennan*, 851 F.3d 464, 471 (5th Cir. 2017). MCC's complaint explicitly challenged the sex-stereotypes mandate.

##### 1.    The complaint explains that HHS imposed multiple overlapping gender-identity mandates, including through sex stereotypes.

Start at ROA.025–26. MCC explained that HHS did not simply put the words "gender identity" into the 2024 Rule. It codified "overlapping ways in which Section 1557 and Title IX address gender identity." ROA.025 ¶ 73. And it said MCC challenges all of them.

MCC pointed out, first, that HHS "defines 'gender-identity' discrimination to be sex discrimination." ROA.025 ¶ 74. But that is not all. HHS also "separately defines '*sex stereotypes*' discrimination to be sex discrimination, and the rule considers '*sex stereotypes*' discrimination to

3

encompass gender-identity discrimination." *Id.* (emphasis added). This paragraph is an explicit quotation of the "sex stereotypes" clause.

## 2. The complaint defines its requested scope of relief as including the sex-stereotypes mandate.

MCC went on to describe other bases and theories under which HHS embedded gender ideology throughout the 2024 Rule. ROA.025 ¶¶ 75–77. Having done so, MCC immediately summed up the scope of its requests for relief: "to the extent this Complaint refers to, or asks the Court to issue relief concerning, the rule and Defendants' actions thereunder prohibiting discrimination on the basis of gender identity, MCC intends to encompass *any language or alternative theory* in the rule that Defendants may use to achieve those same ends." ROA.026 ¶ 78 (emphasis added). MCC's APA claim, in turn, targeted "the rule's gender-identity nondiscrimination requirement" generally—not merely the "gender identity" clause at 45 C.F.R. § 92.101(a)(2)(iv) on which the Government chooses to focus. *See, e.g.*, ROA.048.

## 3. The request for relief repeats MCC's request to vacate all the rule's gender-identity mandates.

The request for relief, too, calls back to this language. It asks the court to "vacate the rule." ROA.057. That includes the whole rule, which necessarily encompasses the sex-stereotypes clause. Then the request for relief reiterates what MCC pled in paragraphs 73–78: asking that the "Court define such relief to encompass *any* language or alternative

4

theory in the rule that Defendants may use to achieve those same ends as to gender identity." ROA.059 (emphasis added).

As explained in MCC's opening brief (at 9–13), MCC's pleading against multiple layers of gender-identity mandates was intentional. MCC knew that HHS had previously embedded gender-identity non-discrimination in multiple ways in its Section 1557 rule. It knew two district courts had revived a nationwide gender-identity mandate based on the sex-stereotypes clause alone. And it knew that this Court, in *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), granted injunctive relief to similar plaintiffs based in part on the separate threat posed by the sex-stereotypes clause. And the Government knew this early in the case. Besides being the defendant in all the litigation concerning this rule, it attached documents to its brief opposing MCC's preliminary injunction explaining this situation. ROA.426–27. It also cited the district court cases that had revived the sex-stereotypes mandate, including in its opposition to MCC's summary judgment motion. ROA.579–80; ROA.674.

In sum, MCC specified that HHS imposed a gender-identity man-date under "sex stereotypes," as well as other theories. ROA.025–26. MCC pled its APA vacatur claim against the rule's gender-identity mandates broadly. ROA.048. MCC asked for relief against the entire rule. ROA.057. And MCC specified that relief against the rule should encompass "any language or alternative theory" imposing a gender-

identity mandate. ROA.059. This pled a request to vacate the sex-stereotypes clause.

**B.    The complaint satisfies this Court's liberal pleading standard.**

In considering the sufficiency of a complaint, this Court applies a "liberal notice-pleading standard." *EPCO Carbon Dioxide Prods.*, 467 F.3d at 470. This simply requires a "short and plain statement" to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir. 2005) (quoting Fed. R. Civ. P. 8(a)(2) and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

**1.    Explicit language satisfies notice pleading.**

Explicit language suffices for notice pleading. Where "[t]he language of the complaint" makes an allegation, that "is sufficient alone to survive" dismissal under the notice pleading standard. *SEC v. Box*, 721 F.2d 134, 136 n.2 (5th Cir. 1983) (per curiam). Even allegations "devoid of much factual particularity … are patently sufficient to state a claim … in terms of the requisite specificity." *Posey*, 415 F.3d at 396.

Here, MCC's language was not devoid of particularity—it explicitly said MCC was challenging all the 2024 Rule's gender-identity mandates, including "sex stereotypes." ROA.025–26. And it explicitly said MCC wanted vacatur to encompass all alternate language and

theories for adding gender identity to section 1557's sex-discrimination prohibition. ROA.057, 059.

These allegations were "sufficient to put the opposing party on notice of the claim." *EPCO Carbon Dioxide Prods.*, 467 F.3d at 470 n.2 (citation modified). There is no better way to make sense of paragraphs 73–78 of the complaint or the prayer for relief's assertion that all relief should encompass the rule's alternative language and theories.

These allegations show that MCC sought relief against both the *words* "gender identity" in the rule and other provisions—such as "sex stereotypes"—that HHS said *include* a ban on gender-identity discrimination.

When the Government's summary judgment briefing suggested MCC challenged only subsection (iv), ROA.663–64 n.13, MCC corrected the record. MCC explained, "the rule defines 'gender-identity' discrimination to be sex discrimination, and separately defines 'sex stereotypes' discrimination to encompass gender-identity discrimination." ROA.705. And again, MCC pointed to the sex-stereotypes provision after the district court vacated subsection (iv), but not subsection (v), in *Tennessee v. Kennedy*, 807 F. Supp. 3d 613 (S.D. Miss. 2025). ROA.750–51. In sum, the Government had clear notice of the scope of MCC's challenge.

### 2. MCC's claims incorporate its description of the overlapping gender-identity mandates.

The Government attempts (at 17) to dismiss MCC's explicit "sex stereotypes" allegations as inadequate because these allegations fall in the "background section of the complaint." This is doubly wrong.

First, MCC incorporated its "sex stereotypes" challenge into each of its claims. MCC "reallege[d] and incorporate[d] herein, as though fully set forth," paragraphs 73–78 into its APA claim—which seeks vacatur. ROA.048. MCC also incorporated the language into its other claims. ROA.051, ROA.054. Under this Court's liberal pleading standard, allegations incorporated by reference into a claim are part of the plaintiff's arguments. As this Court has observed, Rule 10(c) "specifically allow[s] for incorporation by reference … 'in a different part of the same pleading.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006) (approving sufficiency of tort claims incorporated by reference).

These pleading standards are not stringent. Indeed, incorporated allegations need not be found within the same pleading. In *United States for Use & Benefit of Canion v. Randall & Blake*, 817 F.2d 1188 (5th Cir. 1987), the Court held that one complainant had stated a Miller Act claim by incorporating by reference paragraphs from *another plaintiff's complaint* identifying the Act. *Id.* at 1191. Likewise, in *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971 (5th Cir. 1983), the Court held that the plaintiff had adequately implied a

theory under her Equal Pay Act claim because the facts supporting that theory, initially pled in her Title VII claim, were incorporated by reference into her Equal Pay Act count. *Id.* at 974–75.

In this case, MCC's complaint is explicit, not implicit: it states that all claims and requests for relief against gender-identity mandates in the rule are intended to run against the "sex stereotypes" clause. ROA.025–26. The APA claim incorporates these allegations. *E.g., Life Ins. Co. of Va. v. Murray Inv. Co.*, 646 F.2d 224, 229 (5th Cir. 1981) (factual allegations incorporated by reference into breach of contract claim were sufficient to allege a fraud claim).

Second, no doctrine disregards allegations made in a "background" section of a complaint. The section containing MCC's "sex stereotypes" explanation encompasses over half of the document and nearly all the complaint's factual allegations. ROA.019–24. Disregarding this "background section" would mean the complaint contains no operative allegations supporting MCC's claims. Instead, the Court "must accept as true *all* of the allegations contained in [the] complaint." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 112 n.2 (5th Cir. 2019) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). MCC's assertion that its "gender identity" claims also run against "sex stereotypes" cannot be artificially severed from its claims.

### 3. *Franciscan Alliance* generously interpreted a complaint to grant needed relief against gender-identity mandates in an earlier Section 1557 rule.

The Court has applied its liberal interpretation of pleadings to a case challenging the Section 1557 rule's multiple gender-identity mandates. In *Franciscan Alliance*, the Government sought reversal of an injunction granted against enforcement of a gender-identity mandate under Section 1557, contending it went "beyond the scope of Franciscan Alliance's complaint because the complaint only sought relief from the 2016 Rule." 47 F.4th at 377. But this Court focused liberally on the "essential form of relief" that the plaintiffs consistently sought. *Id.* at 378. The Court also relied on Rule 54(c), which allows district courts to grant relief not explicitly requested in pleadings. *Id.*; *see* Fed. R. Civ. P. 54(c) ("final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

Here, from the moment it filed this case, MCC has consistently sought vacatur and said in its complaint that it wanted relief against the "sex stereotypes" language alongside the rule's other gender-identity mandates. That is more than enough to support the relief MCC still pursues now.

The Government is "puzzl[ed]" (at 19) by MCC's reliance on *Franciscan Alliance*, because it misunderstands the case's relevance. The APA claim was moot in that case because the district court vacated the

rule provisions that those plaintiffs asked it to vacate. 47 F.4th at 374. That didn't happen here. Instead, the district court vacated the "gender identity" language from the 2024 Rule but did not vacate the "sex stereotypes" clause. And in *Franciscan Alliance*, the 2020 Rule also served in part to overwrite the language that those plaintiffs sought to vacate. 47 F.4th at 374–75 ("The 2020 Rule gave Franciscan Alliance the remedy an APA violation called for—vacatur of the 2016 Rule's [challenged provisions.]"). That hasn't happened here either: the Government has not even proposed, much less finalized, repeal of the 2024 Rule. The contrast shows why MCC's claim, unlike the APA claim in *Franciscan Alliance*, is not moot.

And more important for this appeal, this Court in *Franciscan Alliance* upheld a permanent injunction issued under the Religious Freedom Restoration Act. *Id.* at 376. It did so because the plaintiffs were threatened by and entitled to an injunction against enforcement of *the statute*—as interpreted to embrace sex-stereotype theories. *Id.* If the Section 1557 statute threatened liability for alleged gender-identity discrimination because "in light of *Bostock*, sex-stereotyping discrimination encompasses gender identity discrimination," *id.* at 372–73, then the 2024 Rule's express "sex stereotypes" clause does likewise.

11

### C. The Government's cases do not apply.

The Government's cited cases do not support this Court ignoring MCC's explicit challenge to the "sex stereotypes" clause, nor abandoning its liberal pleading standard. The Government relies on *McGrew v. Duncan*, 937 F.3d 664, 668 (6th Cir. 2019), to say MCC would need to amend its complaint because it never brought a claim against "the sex-stereotypes provision." Gov.Br.19. But as shown above, the Government misreads MCC's complaint. § I.A. And the Government cites (at 17) *Larsen v. U.S. Navy*, 525 F.3d 1 (D.C. Cir. 2008), where the complaint stated that the defendant had "abandoned" the policy the plaintiffs tried to challenge. 525 F.3d at 5 (citation modified). The plaintiffs there also failed to argue the issue in their briefing. *Id.* In contrast, MCC insisted, rather than disavowed, that its claims encompassed "sex stereotypes," and MCC briefed this issue thoroughly, both below and on appeal. ROA.759–70.[1]

### II. The rule's sex-stereotypes mandate exists today.

The Government doesn't claim to have conducted notice-and-comment rulemaking to repeal 45 C.F.R. § 92.101(a)(2)(v). And it concedes (at 20) that an executive order cannot repeal a regulation promulgated through notice and comment. Instead, the Government contends (at 20)

---

[1] Though MCC adequately pled its claim to vacate the "sex stereotypes" clause, a remand allowing it to amend its complaint would be far more appropriate than affirming a mootness dismissal.

that the judgment in *Tennessee* is "the critical event that decisively mooted plaintiff's claims." It did not.

### A. The sex-stereotypes mandate has not been vacated, repealed, or otherwise negated.

The *Tennessee* district court did not vacate the sex-stereotypes clause, 45 C.F.R. § 92.101(a)(2)(v), and MCC is not protected by the court's more broadly reasoned declaratory judgment, which applies to only the *Tennessee* parties.

### 1. The *Tennessee* vacatur was provision-specific.

The *Tennessee* judgment specified only one relevant subsection for vacatur: 45 C.F.R. § 92.101(a)(2)(iv). This provision—subsection (iv)—said discrimination "on the basis of sex" includes "discrimination on the basis of … [g]ender identity." So while it's true that *Tennessee* "granted a universal vacatur that removed all references to 'gender identity' from the pertinent regulation." Gov.Br.7 (quoting ROA.817), that's not what matters to the dispute here.

Specifically, the *Tennessee* judgment did not vacate *subsection (v)* of § 92.101(a)(2). That subsection says discrimination "on the basis of sex" also includes "discrimination on the basis of … [s]ex stereotypes." And as the *Tennessee* court recognized, "an agency issuing a legislative rule is itself bound by the rule until that rule is amended or revoked." 807 F. Supp. 3d at 621. So the *Tennessee* judgment left the sex-stereotypes clause in subsection (v) on the books. Full stop.

MCC has requested vacatur of subsection (v) because MCC contends that subsection imposes a gender-identity mandate independent of subsection (iv). *See infra* § III. For an Article III mootness inquiry, it does not matter whether MCC's "legal theory is correct" (though it is). *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 496 (5th Cir. 2024). Because subsection (v) "remains on the books," MCC's claim is not moot. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 120 n.5 (2018).

### 2. The *Tennessee* declaratory judgment would include sex stereotypes, but it protects only the parties to that case.

MCC's claim also isn't mooted by the *Tennessee* court's declaratory judgment, because MCC is a stranger to that *in personam* judgment. To be sure, the district court correctly declared: "HHS exceeded its statutory authority when (1) it interpreted Title IX, as incorporated into Section 1557, to prohibit discrimination on the basis of gender identity, and (2) when it implemented Section 1557 regulations concerning gender identity and "gender affirming care." *Tennessee*, 807 F. Supp. 3d at 630.

That is correct, but it doesn't provide MCC with relief. A declaratory judgment is not universal. As the Supreme Court recently explained, "party-specific principles permeate our understanding of equity," and that includes "declaratory" relief. *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025). A declaratory judgment "resolves issues as among [the parties to a lawsuit], but it does not conclude the rights of

14

strangers to those proceedings." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996) (citation modified).

### B. There's nothing "redundant" about granting MCC's request to vacate the sex-stereotypes clause.

The Government says (at 18) that vacating subsection (v), the sex-stereotypes provision, "would be redundant." It would not.

### 1. The *Tennessee* declaratory judgment only protects the parties in that case, not MCC.

Referring to the decision in *Tennessee*, the Government says there is no need for further relief because "the district court 'unequivocally held that Defendants violated the APA to the extent that they defined discrimination on the basis of sex to include gender identity.'" Gov.Br.18 (quoting ROA.817) (citation modified). The Government's arguments rest on the implicit premise that a declaratory judgment for a different party is the same as the vacatur sought by MCC. *E.g.* Gov.Br.11–12, 18. That premise is wrong.

In contrast to a declaratory judgment, APA vacatur is universal relief that benefits the whole world: it "render[s]" the agency action "void." *Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022); *see also Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859–60 (5th Cir. 2022) (vacatur "formally nullif[ies] and revoke[s]" agency action). Declaratory judgments are not

like that. As explained, a declaratory judgment binds the parties to the case, not the world at large. It is party-specific, not universal.

The district court dismissed MCC's claim as moot because it reasoned that "if [HHS] were to interpret [the 2024 Rule]'s reference to '[d]iscrimination on the basis of sex' to mean 'gender identity,' whether under the guise of 'sex stereotypes' or otherwise, they would essentially be reinstating the 'gender identity' subsection in the Rule … in violation of this Court's judgment." ROA.817. But MCC cannot enforce "this Court's judgment." MCC is a stranger to the *Tennessee* litigation, and nonmutual collateral estoppel cannot be invoked against the government. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984).

To be sure, *Tennessee* would be a useful citation if MCC were sued under the sex-stereotypes provision (or any other theory that gender-identity discrimination is prohibited under Section 1557). But for Article III jurisdiction, "[i]t is a federal court's *judgment*, not its *opinion*, that remedies [the] injury." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (emphasis added). The possibility of a favorable opinion cannot create standing, *see id.* at 293, and the existence of a favorable opinion (like the one in *Tennessee*) does not destroy it. MCC needs a *judgment*.

### 2. Trump Administration policy is no substitute for vacatur.

Pointing to the present Administration's executive orders and policy pronouncements, the Government says, "Executive Branch policy

16

precludes the type of enforcement actions plaintiffs once feared." Gov.Br.20; *see also id.* at 15 (arguing "the Rule's provisions on gender-identity discrimination will not be enforced in the ways plaintiff fears").

That position does not make vacatur redundant. It merely proves that the Government—for now—does not publicly promote efforts to actively enforce gender-identity mandates. It doesn't remove the regulations that impose the mandates. Indeed, the Government concedes (at 20) that executive orders *can't* moot MCC's claim requesting vacatur.

At most, if the Government had truly disclaimed all future enforcement (not just during this Administration), such policies would implicate the voluntary-cessation doctrine. But "voluntary cessation of a challenged practice does not moot a case unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior'" will not happen in the future. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The defendant must "carr[y] the 'heavy burden' of making 'absolutely clear' that it could not revert to its [old] policy." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189).

The Government has not done that here. The only way to voluntarily cease a rule is to repeal it. As long as a rule remains on the books, future enforcement is inherently on the table, especially when the

17

mandate is recently enacted rather than in desuetude. Executive orders don't rescind rules, but they can themselves be rescinded as easily as they are issued—without notice and comment. Because the 2024 Rule's sex-stereotypes clause remains in the regulatory code, current policy is cold comfort—HHS remains "free to return to [its] old ways" under future administrations. *Speech First, Inc. v. McCall*, 138 F.4th 219, 222 (5th Cir. 2025) (citation modified). Indeed, HHS's Section 1557 gender-identity mandates have been "flicker[ing] in and out of existence" for over a decade. *Franciscan Alliance*, 47 F.4th at 375. The present Administration's policy pronouncements—though laudable—cannot "strategic[ally] moot[]" MCC's claim. *Tucker v. Gaddis*, 40 F.4th 289, 294 (5th Cir. 2022) (per curiam) (Ho, J., concurring).

This is why MCC needs relief. For as long as subsection (v)'s sex-stereotypes provision remains on the books, a future administration (and even this Administration) will be free to enforce it at any moment as a gender-identity nondiscrimination mandate—with no notice-and-comment rulemaking required. It took the past three administrations almost four years each to change this rule and impose (or repeal) a gender-identity mandate.

The Government is asking this Court to leave its "sex stereotypes" gender-identity mandate on the books and in effect indefinitely, subject only to a press release from HHS or the White House announcing whether or not it will be enforced. And in all likelihood, when that

executive order or press release is modified (without notice and comment) the Department of Justice will claim it is not a binding rule subject to APA review. *See, e.g., Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 831 (E.D. Tenn. 2022) ("Defendants contend the challenged guidance documents are non-binding interpretations"). So the Government would block MCC from challenging its duly-enacted final rule now, and would likely claim MCC cannot challenge a later press release announcing its enforcement. The escape from this catch-22 is this Court's precedent allowing objects of a final regulation to sue. *See, e.g., Tex. Med. Ass'n v. HHS*, 110 F.4th 762, 773 (5th Cir. 2024) ("the fact that the Plaintiffs are now subject to regulations that are contrary to law is itself a concrete injury sufficient to give them standing") (discussing *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015)).

Unlike what the Government claims (at 22), the concern here is not "hypothetical future rules." The concern is *this* rule, in effect against MCC *now*. Until the sex-stereotypes definition is vacated or repealed, MCC is incurring liability for violating what HHS said the rule means. MCC's claim against that existing mandate is not moot.

To sidestep the voluntary-cessation doctrine, the Government says (at 21) "governmental entities bear a 'lighter burden' … in proving that the challenged conduct will not recur." Gov.Br.21 (quoting *U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 673 (5th Cir. 2023) (citation

modified). But in *F.B.I. v. Fikre*, 601 U.S. 234 (2024), the Supreme Court explained that the government's burden is "no less" formidable than any other defendant's. *Id.* at 241; *accord Trinity Lutheran*, 582 U.S. at 457 n.1 (requiring a state government to carry the same "heavy burden") (citation modified).

Anyway, the Government's "lighter burden" cases don't help it here. In *Navy Seals 1-26*, the Navy *had* rescinded the challenged policy—it was required to do so by Congress. *See* 72 F.4th at 674. The distant possibility of legislative change followed by the Navy "reimplement[ing]" the same vaccine mandate was not enough to overcome mootness. *See id.* In contrast here, subsection (v)'s sex-stereotypes provision doesn't need to be "reimplement[ed]." *Id.* It's still on the books and will remain there unless HHS conducts notice and comment to repeal it.

### III. The sex-stereotypes mandate imposes a gender-identity mandate distinct from the provisions *Tennessee* vacated.

The "sex stereotypes" provision at 45 C.F.R. § 92.101(a)(1)(iv) independently adds "gender identity" to Section 1557 separate from the "gender identity" language at § 92.101(a)(1)(iv).

#### A. The 2024 Rule says its sex-stereotypes mandate prohibits gender-identity discrimination.

In the 2024 Rule, HHS declared that "discrimination against a person because they are transgender" is a violation of the prohibition on

"sex stereotypes" discrimination. 89 Fed. Reg. at 37578. And it said the 2024 Rule "prohibits discrimination against individuals who do not conform with stereotypical notions of how an individual is expected to present as male or female, regardless of gender identity." *Id.* at 37574.

## B. Binding requirements in a preamble are regulations subject to APA judicial review.

That rule reflects HHS's authoritative interpretation that the sex-stereotypes provision prohibits gender-identity discrimination apart from the "gender identity" clause *Tennessee* vacated. And subsection (v)'s sex-stereotypes clause—as reflected in the agency's authoritative interpretation—has the "practical binding effect," *Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019), of imposing its own gender-identity mandate—even without subsection (iv) (citation modified). Such an interpretation is itself reviewable agency action. *See Cent. & S. W. Servs.*, 220 F.3d at 689 n.2.

## C. Recent history shows why MCC needs vacatur of the sex-stereotypes clause.

The 2024 Rule isn't the first time HHS has said gender-identity discrimination is discrimination based on "sex stereotypes." Prior administrations and advocates have been claiming that for years. *See* MCC.Br.7–10. Just a few years ago, two different district courts concluded the 2016 Rule's sex-stereotypes provision created its own gender-identity mandate, independent of the 2016 Rule's provisions

explicitly adding "gender identity" to the definition of sex discrimination. *See Asapansa-Johnson Walker v. Azar*, 480 F. Supp. 3d 417, 427, 430 (E.D.N.Y. 2020); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 64 (D.D.C. 2020). These courts "reanimate[d] the [2016] rule's 'sex-stereotyping' prohibition," and "reasoned that, in light of *Bostock*, sex-stereotyping discrimination encompasses gender-identity discrimination." *Franciscan Alliance*, 47 F.4th at 372–73.

That is why this Court concluded in *Franciscan Alliance* that injunctive relief was proper even though the 2016 Rule's "gender identity" clause had already been repealed. 47 F.4th at 372–73. Without an injunction, the *Franciscan Alliance* plaintiffs risked enforcement of the same unlawful gender-identity mandate on a sex-stereotyping theory. *Id.* at 375–77.

What happened before can happen again. MCC needs the sex-stereotypes clause to be vacated. And the Government cannot now show that vacating the sex-stereotypes clause in the 2024 Rule would be meaningless.

## IV. This Court should reach the merits and direct entry of summary judgment for MCC.

As discussed in MCC's opening brief, this Court should reverse the denial of MCC's motion for summary judgment and remand with instructions to vacate the "sex stereotypes" clause. MCC.Br.31–40.

22

**A.    The district court effectively reached the merits.**

The Government cites cases saying that this Court does not normally reach a question not addressed on the merits by the district court. Gov.Br.23 (citing *PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 563 (5th Cir. 2023), and *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 482–83 (5th Cir. 2006)). But it is not persuasive to say the district court did not reach the merits.

The district court *has ruled* that all the gender-identity mandates in the 2024 Rule were illegal, but it refused to grant MCC full relief to that effect because it mistakenly thought MCC was already protected. In *Tennessee*, the district court held that Section 1557—being derivative of Title IX—contains no gender-identity nondiscrimination mandate. *Tennessee*, 807 F. Supp. 3d at 630. The problem for MCC, as these briefs show, is that the district court's *relief* did not match that *merits* conclusion. Despite its legal conclusion, the district court vacated only specific clauses in the 2024 Rule—not including "sex stereotypes"—and it gave declaratory judgment to the state plaintiffs, but no one else. *Id.*

When MCC asked the district court to simply extend its *Tennessee* holding to vacate the "sex stereotypes" gender-identity mandate, the district court did not say that mandate was acceptable. Nor did it say the rule's sex-stereotypes clause doesn't impose a gender-identity mandate, or, that MCC is wrong on the merits. Instead, the court said its ruling in *Tennessee* should be good enough for MCC. ROA.817.

23

It was not. MCC did not receive vacatur of the sex-stereotypes clause, and declaratory judgment for other parties is not "precisely the same" as vacatur for MCC. *See, e.g., Space Expl. Techs. Corp.*, 151 F.4th at 767 n.5 (citation modified). But the district court mistakenly *thought* the relief given to the States was sufficient for MCC because the district court's opinion agreed that all gender-identity mandates in the 2024 Rule are illegal. When deciding whether this Court should resolve MCC's summary-judgment motion, that conclusion means there is nothing left for the district court to consider on remand. So this Court should direct the district court to simply enter judgment for MCC.

In other words, the present case is not one where the district court did not consider the merits of MCC's summary judgment motion. The district court thought it had resolved those issues in MCC's favor—so much so that it dismissed MCC's claim as moot. The present disagreement is not about whether the rule's gender-identity mandates should be eliminated but about whether the district court has already done the job. When this Court concludes that the district court did not grant MCC full relief, this Court should order that the district court do so now, because the district court already agreed in principle that MCC is correct on the merits.

## B.    The Government does not dispute the merits.

The Government has now adopted basically the same merits position as MCC and the district court. As the Government points out, the President's executive orders view the 2024 Rule's gender-identity mandates as "legally untenable." Gov.Br.10–11 (citation modified). Executive orders can't vacate rules, so MCC still needs vacatur under the APA. But on the merits of whether the sex-stereotypes clause's gender-identity mandate is illegal, the Government rightly offers no opposition.

Indeed, the Government's "redundancy" argument discussed above, § II.B, which fails to negate MCC's need for relief, supports MCC's request that this Court direct entry of judgment for MCC. The Government deems declaratory relief for the States to have mooted MCC's request to vacate the sex-stereotypes clause. That position assumes that *Tennessee*'s legal analysis encompasses the "sex stereotypes" clause. And that assumption means the district court agreed with MCC on the merits of its summary judgment motion. Remand is not needed in this circumstance.

The Government does not appear to be arguing that the sex-stereotypes clause is lawful, or that it does not include a gender-identity mandate. Instead, the Government's redundancy argument implies that the district court's legal conclusion against the 2024 Rule's gender-identity mandates sweeps in the sex-stereotypes clause. So the

Government's cited cases that say this Court does not normally decide a merits issue unaddressed below do not apply here, where the district court all but decided that MCC should win on the merits.

**C.     The Government identifies no issue worth consideration on remand.**

Indeed, the Government identifies *no* issues that the district court left unresolved that would make remand necessary. It specifies no question that requires more analysis by the district court to grant summary judgment for MCC.

It could be that the Government's opposition to MCC's summary judgment motion reflects an institutional position about vacatur. In fact, the Government included a footnote preserving its institutional disagreement with the well-established practice of APA vacatur. Gov.Br.11 n.2. But even the Government admits that argument is a non-starter in this circuit. *Id.*

That leaves no good reason for remand other than to issue the vacatur that MCC requests. As this Court explained in *Ozee v. American Council on Gift Annuities, Inc.*, 143 F.3d 937 (5th Cir. 1998), this Court considers whether to enter judgment based on whether remand is "necessary for additional fact-finding" or some other reason. *Id.* at 940– 41. There is no such topic for the district court to explore. The question here is not whether the 2024 Rule's gender-identity mandates (including under "sex stereotypes") are illegal. All agree they are, including in

the well-reasoned *Tennessee* opinion by the district court. The only question is whether the district court actually protected MCC in precisely the same way that vacatur would. It did not. This Court should close the loop by directing that MCC be granted the vacatur it requested.

## CONCLUSION

The Court should reverse the judgment dismissing MCC's claims as moot and direct the district court to render judgment for MCC.

Dated: June 18, 2026

Respectfully submitted,

*s/Matthew S. Bowman*

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Julie Marie Blake
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jblake@ADFlegal.org

Matthew S. Bowman
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
mbowman@ADFlegal.org
jbursch@ADFlegal.org

Natalie D. Thompson
ALLIANCE DEFENDING FREEDOM
7250 Dallas Parkway, Suite 700
Plano, TX 75024
(469) 894-8700
nthompson@ADFlegal.org

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this brief contains 5,812 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: June 18, 2026

*s/Matthew S. Bowman*
Matthew S. Bowman
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

<div style="margin-left:40%">

*s/ Matthew S. Bowman*
Matthew S. Bowman
*Counsel for Appellant*

</div>